STATE OF CONNECTICUT *v.* RICHARD WILLIAM MALTESE
(11037)

SPEZIALE, C. J., PETERS, HEALEY, SHEA and GRILLO, Js.

Argued December 8, 1982—decision released February 22, 1983

*Robert M. Casale,* for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

PETERS, J. In this case, the defendant, Richard Maltese, is appealing from his conviction, after a trial to a jury, of aiding robbery in the first degree, in violation of General Statutes §§ 53a-134 (a) (4)[1] and 53a-8,[2] and of aiding larceny in the first degree,

---

[1] "[General Statutes] Sec. 53a-134. ROBBERY IN THE FIRST DEGREE: CLASS ·B FELONY. (a) A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . (4) displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision, it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a weapon from which a shot could be discharged. Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime."

[2] "[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

in violation of General Statutes §§ 53a-122 (a) (2)[3] and 53a-8. His appeal challenges the adequacy of the trial court's instructions on intent, the sufficiency of the evidence to support his conviction, and the admissibility of certain testimony.[4] We find no error.

The jury might reasonably have found the following facts. Early in the morning of November 12, 1979, Leonard Ricciardelli was unloading his van in the parking lot of the Safety Electrical Company in Wallingford. As a commissary route man for the Macke Company, Ricciardelli was employed to service vending machines at various locations, including the Safety Electrical Company plant. His employment required him to service change machines, and therefore he carried a supply of coins as well as accumulated paper money. Edward Vigliotto accosted Ricciardelli in the Safety Electrical Company parking lot, threatened him with a gun, and took from him several bags of money, a metal box, and his Macke van. Ricciardelli immediately notified the Wallingford police, describing to them the robbery and the robber.

Wallingford police officer Jay Juliano heard a radio dispatch about the Safety Electrical Company robbery within minutes of its occurrence.

[3] "[General Statutes] Sec. 53a-122. LARCENY IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of larceny in the first degree when: . . . (2) the value of the property or service exceeds two thousand dollars."

[4] At the close of all of the evidence, the trial court granted the defendant's motion for the entry of judgments of acquittal on two additional counts on which he had been charged, conspiracy to commit robbery in the first degree, in violation of General Statutes §§ 53a-134 (a) (4) and 53a-48, and conspiracy to commit larceny in the first degree, in violation of General Statutes §§ 53a-122 (a) (2) and 53a-48.

Observing in the vicinity a white Ford Torino automobile traveling at a faster than normal rate of speed, the officer stopped the car. Vigliotto was driving the car and the defendant Richard Maltese was a passenger. In the car Juliano and other police officers found cloth money bags, large metal cases, a pistol, and various personal belongings of Vigliotto and of the defendant. Both Vigliotto and the defendant were arrested.[5]

The defendant consistently claimed that he was a mere bystander who had simply gone along with Vigliotto for a ride. He conceded, however, that he had become suspicious of Vigliotto's behavior when he observed Vigliotto, with headlights turned off, following Ricciardelli's van to the Safety Electrical Company. He acknowledged that he was in possession of and drove Vigliotto's car during the time that Vigliotto was committing the robbery, that he had the opportunity to leave he area, but that he chose instead to return to pick Vigliotto up. Photographic exhibits indicated that the car had been backed up into bushes and trees in order to provide access to the contents of the stolen van which was partially concealed in a wooded area near the site of the robbery. Finally, upon inquiry by officer Juliano when the Vigliotto car was stopped, the defendant claimed that he had no identification upon his person and falsely identified himself as "John Williams." A search of the car disclosed a paper bag containing the defendant's wallet as well as a comb, a box of matches, a small flashlight, a twenty dollar bill and four one dollar bills. The search also revealed the contraband, the

---

[5] Vigliotto initially fled from the scene of the automobile stop, was thereupon apprehended elsewhere, escaped again, and was a fugitive from justice at the time of the defendant's trial.

money bags and the metal cases, in plain sight in the rear of the car, while the pistol was found in the front on the floor, between the heels of the defendant's feet.

The defendant's first claim of error asserts that the trial court did not sufficiently instruct the jury on an essential element of the crimes with which he was charged because the court neglected to define accessorial intent. Concededly, the trial court read to the jury the provision of § 53a-8 which requires that a person charged with being an accessory must be shown to have acted "with the mental state required for commission of an offense . . . ." The defendant claims, however, that the trial court did not sufficiently explain the meaning of "mental state" under § 53a-8. Relying on *State* v. *Harrison,* 178 Conn. 689, 694, 425 A.2d 111 (1979), he argues that the court failed to instruct the jury explicitly that the state was required to prove both that the defendant intended to aid Vigliotti and that the defendant intended, in so doing, to commit the underlying substantive crimes of robbery and of larceny.

The state, noting that the defendant neither filed a proper request to charge nor took an appropriate exception to the instructions as given, maintains that we need not review this claim of error. We disagree. A question of constitutional dimension is raised by a court's alleged failure to explain the extent of the intended deprivation of property required as an element of the offenses with which a defendant has been charged. *State* v. *Kurvin,* 186 Conn. 555, 558, 442 A.2d 1327 (1982); *State* v. *Griffin,* 175 Conn. 155, 163, 397 A.2d 89 (1978). This claim of error therefore satisfies the second

branch of *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), which permits appellate review of a belatedly raised claim alleging deprivation of a fundamental constitutional right and a fair trial. The scope of appellate review of such a claim is, however, limited, by virtue of its constitutional origin. "A claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather whether when reviewed in the context of the entire trial it violated some right guaranteed to the defendant by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut." *State* v. *Kurvin,* supra, 564–65.

Applying this standard of constitutional review, we find no error in the charge given by the trial court. After reading the accessory statute, § 53a-8, the court elaborated on the various elements of the crimes of larceny and robbery. Repeatedly, the court adverted to the state's burden of proving that the defendant had acted with the specific wrongful intention of depriving the owner of his property. Although the intent requirement was not explicitly reiterated in describing the additional element of force that is required to prove robbery, the instruction read as a whole; *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982); *State* v. *Estep,* 186 Conn. 648, 652, 443 A.2d 483 (1982); *State* v. *Piskorski,* 177 Conn. 677, 746–47, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); sufficiently apprised the jury of the elements of the crimes with which the defendant

was charged so that there was no constitutional violation of the defendant's rights. See *State* v. *Nardini,* 187 Conn. 513, 531–33, 447 A.2d 396 (1982).

The defendant's second claim of error challenges the sufficiency of the evidence to sustain the verdict against him on the counts of aiding robbery and aiding larceny. The defendant, relying on *State* v. *Kas,* 171 Conn. 127, 131, 368 A.2d 196 (1976), alleges that his mere presence as a passenger in an automobile containing stolen goods is insufficient, as a matter of law, to establish his guilt. The state relies on the competing principle that a person may be convicted as an accessory if he intentionally assists in the commission of a crime, whether or not he actively participated in every stage of its commission. *State* v. *Parham,* 174 Conn. 500, 508, 391 A.2d 148 (1978); *State* v. *Hicks,* 169 Conn. 581, 585, 363 A.2d 1081 (1975). Conviction as an accessory depends, as do criminal convictions generally, on the proper inferences to be drawn from all of the circumstances surrounding the defendant's presence and conduct. "Mere presence as an inactive companion, passive acquiescence, or the doing of innocent acts which may in fact aid the one who commits the crime must be distinguished from the criminal intent and community of unlawful purpose shared by one who knowingly and wilfully assists the perpetrator of the offense in the acts which prepare for, facilitate, or consumate it." *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650 (1967).

The circumstances in the present case could reasonably have been believed by a jury to demonstrate that the defendant was more than a passive observer of a criminal scene. The defendant's control of the Vigliotto car while Ricciardelli was being

held up and his return to the area to pick up Vigliotto and the contraband that Vigliotto had seized are consistent with an inference that the defendant was acting as a wheelman. His criminal intentions could be found to have been confirmed by his giving of an alias and by his concealment of identification papers in a separate brown bag.

We are obligated to review the evidence as favorably as possible with a view toward sustaining the verdict and then to decide whether the verdict is one which jurors acting reasonably could have reached. *State* v. *Maturo,* supra, 601; *State* v. *Jeustiniano,* 172 Conn. 275, 281–82, 374 A.2d 209 (1977). Evidence is sufficient to sustain a verdict if the jury could reasonably have concluded, upon the facts established and the reasonable inferences drawn therefrom, that the defendant's guilt was proven beyond a reasonable doubt. *State* v. *Stankowski,* 184 Conn. 121, 126, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Jackson,* 176 Conn. 257, 262, 407 A.2d 948 (1978). Applying these principles to the record before us, we conclude that the defendant's conviction had a sufficient evidentiary basis.

The defendant's third and final claim of error concerns an aspect of the defendant's cross-examination. The state's attorney questioned the defendant about his going to Florida in June, 1979. The defendant, while conceding that he was then on probation, maintained that he had informed his probation officer, Sharon Wilson, of his plans. The state's attorney thereupon asked whether leaving the state without the permission of the probation officer was not a violation of the defendant's probation. The defendant objected to this question,

defense counsel stating: "We have no evidence that he violated his probation in any way." The state's attorney maintained that the question was relevant to the defendant's "intention," and, on that basis, the question was allowed.

The defendant now argues that this evidence was improperly admitted because evidence of criminal misconduct that does not result in a conviction may not be used to impeach the credibility of a witness. He argues that its admission was highly prejudicial because the defendant's credibility in testifying about the events that occurred on November 12, 1979, was crucial to his case.

There are three reasons why this claim of error cannot be sustained. First, the ground now suggested for disallowance of the question was not the ground relied upon at trial. Not having been properly raised before the trial court, that claim is not properly reviewable here. Practice Book § 3063; *State* v. *Gunning*, 183 Conn. 299, 303, 439 A.2d 339 (1981). Second, the prejudicial effect of this testimony pales into insignificance in light of the defendant's concession, on direct examination, that he had previously been convicted of five felonies. Third, the probation officer herself testified, without objection, to the defendant's violation of probation.

There is no error.

In this opinion the other judges concurred.