STATE OF CONNECTICUT *v.* ALFRED MCCALPINE
STATE OF CONNECTICUT *v.* BOBBIE WILLIAMS
(9552)
(9560)

PETERS, PARSKEY, SHEA, ARMENTANO and GRILLO, Js.

Argued May 4—decision released July 26, 1983

*Joette Katz,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* for the appellant in each case (defendant).

*Lawrence J. Tytla,* deputy assistant state's attorney, with whom were *John M. Massameno,* assistant state's attorney, and, on the brief, *John T. Redway,* state's attorney, for the appellee in each case (state).

PARSKEY, J. After a trial to the jury, the defendants were each found guilty of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and one count of kidnapping in the second degree in violation of General Statutes § 53a-94. From the judgment the defendants have appealed.

On appeal the defendants raise four claims of error. All relate to the trial court's charge to the jury. As one of their claims the defendants allege that the court, by referring to a knife in its instructions, amended the information in each case to include acts not originally charged. Two claims focus on the court's instructions regarding the defendants' status as aiders and abettors. Finally, a fourth claim avers that the court erred

on the kidnapping count by failing to instruct the jury that they could find that the victim's abduction was merely incidental to the commission of another crime.

The jury could reasonably have found the following facts: The victim, Edward Nikogosian, was a limousine driver. At 9 p.m. on August 29, 1978, Nikogosian, pursuant to a call from the company dispatcher, drove to La Guardia Airport. There he picked up a man who gave the name Chuck Mangione (in reality, Daniel Faila) and his two bodyguards. The bodyguards who are the defendants in this case gave their names as Alfred (Alfred McCalpine) and Role (Bobbie Williams).[1]

Nikogosian drove the men into Manhattan to the Paramount Hotel and thereafter drove them to several locations throughout the city. When they returned to the hotel at approximately 2 a.m. on August 30, the police arrived and took the three passengers to the police station. Nikogosian did not know why they were arrested but he followed the police car to the station in order to get paid for his chauffeuring. The two defendants were released but could not pay Nikogosian. Instead, he drove them back to the hotel and returned in the morning to drive them to the police station where Faila's uncle was to pay him. He remained there with the defendants from 9:45 in the morning until 3 p.m. at which time Faila was released and paid Nikogosian $200. Nikogosian then again drove them around the city making various stops.

Finally the three asked to go to Hartford. Nikogosian requested an additional $250 before making the trip. Faila gave him $260 and after dinner they left for Connecticut.

---

[1] Daniel Faila was not tried with the defendants and is not a party to this appeal.

Faila told Nikogosian to turn off the highway when they got to Cromwell and directed him to the first hotel off the exit. Because it was full, they went to another hotel across the street. The defendants brought the luggage in. Thereafter, they came outside and told Nikogosian to park the limousine. They also indicated to Nikogosian that Faila had requested a receipt. In accordance with company policy, Nikogosian had to give the receipt to the person who paid him. Thus he went into the building and rode the elevator upstairs to the room with the three men.

When they entered the room, Faila went into the bathroom while Nikogosian waited for a pencil to make out the receipt. Suddenly, the two defendants covered Nikogosian's mouth with a cloth that smelled of chemicals. They were trying to push him onto the bed when Faila came out of the bathroom with a shotgun. Nikogosian relinquished his wallet holding nearly $900 and several credit cards. McCalpine then bound Nikogosian's hands and legs. At some point, during the robbery, Williams held the shotgun. Williams also called out for someone to hand him a knife but Nikogosian was never touched by one. The men took the car key and left. Moments thereafter, Nikogosian partially untied himself and called the front desk for help. The police responded.

When the police arrived, they found Nikogosian on the bed, wrapped in sheets with his hands and legs tied. They also found a necktie that had been used to keep a washcloth in the victim's mouth so that he could not speak.

The defendants were arrested the following day at Bradley Airport after Faila attempted to use one of the stolen credit cards.

The jury, during the course of the trial, heard some testimony concerning a knife. The court thereafter as part of its charge made mention of a knife in its definition of a deadly weapon. The defendants argue that the trial court, by referring to a knife in its instructions, amended the information to include acts not originally charged in the information.[2] The defendants claim that this alleged variance permitted the jury to consider guilt as to an offense materially different from that charged in the information.

During the course of the trial the jury heard evidence about and ultimately saw a boy scout jackknife that the state attempted to introduce as an exhibit. The evidence

---

[2] The pertinent informations provided:

"AMENDED INFORMATION                                    CR9-41787

IN THE SUPERIOR COURT OF THE STATE OF CONNECTICUT

Middlesex County, January Term, 1979, John T. Redway, State's Attorney for the County of Middlesex, accuses ALFRED McCALPINE, 17D Deleaware Jackson Apt. Tuscaloosa, Alabama, of ROBBERY IN THE FIRST DEGREE and charges that at the Town of Cromwell on or about the 30th day of August, 1978, at approximately 9:45 p.m., at the Knights Inn, Route 72, the said ALFRED McCALPINE, aided by other participants actually present, namely Bobbie Williams, Daniel Faila, aka Daniel Lauretta, aka Anthony Morino, did commit a robbery of Edward Nikogosian and in the course of the commission of the crime the said Daniel Faila, was armed with a deadly weapon, to wit: a shot gun, in violation of Section 53a-134 (a) (2) of the General Statutes."

"AMENDED INFORMATION                                    CR9-41785

IN THE SUPERIOR COURT OF THE STATE OF CONNECTICUT

Middlesex County, January Term, 1979, John T. Redway, State's Attorney for the County of Middlesex, accuses BOBBIE WILLIAMS, 645 Hughes Street, Atlanta, Georgia, of ROBBERY IN THE FIRST DEGREE and charges that at the Town of Cromwell on or about the 30th day of August, 1978, at approximately 9:45 p.m., at the Knights Inn, Route 72, the said BOBBIE WILLIAMS, aided by other participants actually present, namely Daniel Faila, aka Daniel Lauretta, aka Anthony Morino and Alfred McCalpine, did commit a robbery of Edward Nikogosian and in the course of the commission of the crime the said Daniel Faila, aka Daniel Lauretta, aka Anthony Morino, was armed with a deadly weapon, to wit: a shot gun, in violation of Section 53a-134 (a) (2) of the General Statutes."

adduced at trial concerning a knife was minimal. Nikogosian testified that, as the two defendants were tying him up, he heard Williams call for a knife. The victim further testified that he was never touched with a knife nor did he see a knife during the attack. Nikogosian also indicated that he may have seen a knife earlier and that he felt threatened by Williams' request for a knife.

A knife had been seized on the day following the attack from a hotel room registered to Daniel Faila. The court refused to admit the knife as an exhibit because it was not named in the search warrant and because the victim was unable to identify the particular knife. The court instructed the jury to disregard and forget about the knife. The state concedes that the evidence failed to disclose that the knife qualified as either a deadly weapon or a dangerous instrument. See General Statutes § 53a-3 (6) and (7).

The defendants rely on two brief excerpts from the court's charge to establish their claim. After defining robbery, the court proceeded to discuss first degree robbery where a participant is armed with a deadly weapon or dangerous instrument. The court defined a deadly weapon as "a weapon from which a shot may be discharged, or a switchblade knife, gravity knife, billy, blackjack, bludgeon, or metal knuckles." The court then added "[y]ou should know that under the definition a weapon from which a shot may be discharged, such a gun that is in proper functioning condition, whether or not loaded at the time of the offense, is a deadly weapon. Also a knife is defined in that definition." The defendants argue that these scant references amounted to a variance and allowed the jury to consider guilt on an offense materially different from that charged in the information.

The defendants seek review of this claimed error despite their failure to preserve it in the trial court. Nevertheless, because the issue presented involves a fundamental constitutional right, we will accord it appellate review. *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973). The scope of appellate review of such a claim is, however, limited by virtue of its constitutional origin. "A claimed constitutional error, raised for the first time on appeal, will be examined, if at all, not to ascertain whether the ruling or instruction was undesirable, erroneous, or even universally condemned but rather whether when reviewed in the context of the entire trial it violated some right guaranteed to the defendant[s] by the fourteenth amendment to the constitution of the United States; *Cupp* v. *Naughten,* 414 U.S. 141, 146, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); or article first, § 8 of the constitution of Connecticut." *State* v. *Kurvin,* 186 Conn. 555, 564-65, 442 A.2d 1327 (1982); *State* v. *Roque,* 190 Conn. 143, 157, 460 A.2d 26 (1983); *State* v. *Maltese,* 189 Conn. 337, 342, 455 A.2d 1343 (1983).

Applying this standard of constitutional review, we find no error. At the very inception of the charge the court instructed the jury that they were the sole judges of the facts and that their memories of the facts controlled. The court, thereafter, read to the jury the information charging the defendants with robbery in the first degree. The information specifically alleged that Daniel Faila, during the commission of the crime, "was armed with a deadly weapon, to wit: a shot gun . . . ." The written informations also were in the possession of the jury during its deliberations.

It is clear from the circumstances of this case that the court's scant references to a knife not in evidence were not sufficient to constitute an unauthorized amendment of the information. We observe initially that the court read to the jury the information and the

jury had the unaltered documents with them during their deliberations. This circumstance alone is sufficient to discount the possibility of variance. *State* v. *McCarthy,* 179 Conn. 1, 13, 425 A.2d 924 (1979); *State* v. *Edwards,* 163 Conn. 527, 531–32, 316 A.2d 387 (1972). Further there are the added circumstances that the jury were initially instructed during the trial to disregard and forget about the knife and, later, during the jury charge, were admonished that their recollections of the facts were controlling. On these facts we are not inclined to conclude that the jury disregarded the court's instructions. See *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312 (1972).

The defendants' next claim of error focuses on the court's instructions to the jury regarding the defendants' status as aiders and abettors under General Statutes § 53a-8.[3] The record indicates that at trial the defendants neither filed an appropriate request to charge nor objected to the court's instructions on this issue. Review, therefore, is sought on the basis of *State* v. *Evans.*

The defendants present a bifurcated analysis in their brief. Essentially, the defendants' claim is that the court committed error of constitutional significance when it failed to remind the jury of § 53a-8 during the portion of the jury charge defining robbery. The defendants claim that the court's failure to repeat the intent to aid portion of its charge impermissibly removed that

---

[3] General Statutes § 53a-8 provides: "CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

issue from the jury's consideration. Secondly, the defendants assert that the court's instructions were confusing.

The court read the text of § 53a-8 to the jury. We note that the defendants do not attack the validity of § 53a-8 or claim that the meaning of any of its terms is not plain. We observe further that the defendants' argument that the instruction was confusing is based principally upon one sentence removed from context.[4]

The defendants' claim that § 53a-8 was not referenced to the court's instruction on robbery does not raise a constitutional question.[5] See *State* v. *Cannon,* 185 Conn. 260, 268–69, 440 A.2d 927 (1981). The defendants' second claim is equally bankrupt. "In considering the charge as a whole we eschew critical dissection; see, e.g., *State* v. *Harris,* 172 Conn. 223, 226, 374 A.2d 203 (1977); thereby not passing upon the instructions attacked in 'artificial isolation' from the whole charge. See *Cupp* v. *Naughten,* 414 U.S. 141, 147, 94 S. Ct. 396, 38 L. Ed. 2d 368 (1973); *Mazzucco* v. *Krall Coal & Oil Co.,* 172 Conn. 355, 357, 374 A.2d 1047 (1977); *State* v. *Crawford,* 172 Conn. 65, 69, 372 A.2d 154 (1976). The charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict. *State* v. *Williams* [182 Conn. 262, 269, 438 A.2d 80 (1980)]; *State* v. *Harris,* supra, 226; *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 (1966)." *State*

---

[4] The defendants' claim of confusion rests principally on the following excerpt: "whether or not either defendant here as an accessory or accomplice or actually by doing physical acts, did abduct Mr. Nikogosian." The defendants claim that the language created confusion as to the distinction between a principal and an accessory.

[5] Defense counsel in attempting to distinguish *State* v. *Cannon,* 185 Conn. 260, 440 A.2d 927 (1981), argued that although the claim herein may be equal to that made in *State* v. *Cannon,* the case may nevertheless be distinguished on the basis of the instructions given by the trial court.

v. *Corchado,* 188 Conn. 653, 661, 453 A.2d 427 (1982). The claim of confusion made herein, based principally on one sentence taken out of context, is not sufficient to establish a constitutional claim. We decline, therefore, to afford this issue appellate review under the second branch of *State* v. *Evans,* supra, 70.

The defendants also assert that the "intent" element of § 53a-8 requires that the aider and abettor possess the intent to aid the commission of the basic crime as well as the aggravating circumstance.[6] The defendants claim that the court was required to instruct the jury that the defendants had to possess the requisite intent for robbery, the intent to aid a robbery and the intent that a deadly weapon be possessed.[7]

The defendants not having raised the present claim in the court below now seek review on the basis of *State* v. *Evans.* Because it appears that a question of constitutional dimension is raised by the court's alleged failure properly to explain the "intent" element required by § 53a-8 we will accord this claim appellate review. *State* v. *Evans,* supra, 70.

---

[6] The defendants were both charged with robbery in the first degree in violation of General Statutes § 53a-134 (a) (2). That section provided that: "A person is guilty of robbery in the first degree when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: . . . (2) is armed with a deadly weapon . . . ."

Robbery is defined by § 53a-133 as follows: "A person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."

[7] The defendants concede that the crime of robbery in the first degree; General Statutes § 53a-134; imposes vicarious liability on a defendant when he commits a robbery with another person who, although unbeknownst to him, is armed with a deadly weapon. They insist, however, that the status of being an accessory does not impose the same liability.

Reading the charge as a whole; *State* v. *Maturo,* 188 Conn. 591, 599, 452 A.2d 642 (1982); we find no error. To establish the guilt of an accused as an accessory for aiding and abetting the criminal act of another, the state must prove criminality of intent and community of unlawful purpose. *State* v. *Teart,* 170 Conn. 332, 336, 365 A.2d 1200 (1976). The mental state of an aider and abettor incorporated in § 53a-8 does not require that the accused know of or endorse every act of his coparticipant in crime. *Parham* v. *Manson,* 500 F. Sup. 551, 558 (1980); see *State* v. *Parham,* 174 Conn. 500, 506–508, 391 A.2d 148 (1978). The mental state required by § 53a-8 exempts from liability those whose innocent acts in fact aid one who commits a crime. See *Parham* v. *Manson,* supra; *State* v. *Teart,* supra; *State* v. *Laffin,* 155 Conn. 531, 536, 235 A.2d 650 (1967); *State* v. *Enanno,* 96 Conn. 420, 425, 114 A. 386 (1921).

Nothing we said in *State* v. *Harrison,* 178 Conn. 689, 425 A.2d 111 (1979), on which the defendants heavily rely is to the contrary. In *Harrison,* the defendant was charged as an accessory to attempted robbery. Factually the case involved an unsuccessful robbery of a gas station by two men, one of whom was armed with an operable firearm. The applicable statutes were General Statutes §§ 53a-8, 53a-49 (a) (2), and 53a-134 (a) (2). The court (at pp. 694–95) noted that the accessory statute, § 53a-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to aid the principal and that in so aiding he intend to commit the offense with which he is charged. The court thereafter indicated that the state in that case had to prove beyond a reasonable doubt that the defendant: "(1) intended to aid the two principals in robbing the gas station, and (2) intended to deprive another of property." Contrary to the defendants' allegations, the case

imposed no requirement that the accessory possess the intent to commit the specific degree of the robbery charged or the intent to possess a deadly weapon.

Finally, the defendants claim error in the trial court's failure to instruct the jury on the second count that they could find that the victim's abduction was merely incidental to the commission of another crime and, thus, would not support a conviction of kidnapping in the second degree. The defendants did not file a request to charge on this issue or voice an objection and exception to the court's charge. Accordingly, review is sought on the basis of plain error; Practice Book § 3063; and *State* v. *Evans.*

The error claimed by the defendants is neither plain error nor does it fall within the *Evans* rule. It is, therefore, not reviewable by this court. *State* v. *Johnson,* 185 Conn. 163, 177, 440 A.2d 858 (1981), aff'd, 460 U.S. 73, 103 S. Ct. 969, 74 L. Ed. 2d 823 (1983).

There is no error.

In this opinion PETERS, ARMENTANO and GRILLO, Js., concurred.

SHEA, J. (concurring). I agree with all of the court's opinion except the portion of the discussion of accessory liability which intimates that the mental state required of an accomplice who is charged with a crime is something less than that which must be proved against a principal. "The prevailing view is that the accomplice must . . . have the mental state required for the crime of which he is to be convicted on an accomplice theory." LaFave & Scott, Criminal Law § 64, p. 506. We adopted this view in *State* v. *Harrison,* 178 Conn. 689, 694, 425 A.2d 111 (1979): "The accessory statute, § 53a-8, sets forth the element of intent as a twofold

requirement: that the accessory have the intent to *aid* the principal *and* that in so aiding he intends to *commit* the offense with which he is charged." (Emphasis in original.) In *State* v. *Haddad,* 189 Conn. 383, 399, 456 A.2d 316 (1983), we reaffirmed this position by applying to an accomplice the statutory definition that "[a] person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct." General Statutes § 53a-3 (11). We have no occasion to consider any exceptions to this essential for accomplice liability, the most widely known at common law being the felony murder rule, a modified version of which is contained in General Statutes § 53a-54c.

In stating that an accomplice need not "endorse every act of his coparticipant in crime" or "possess the intent to commit the specific degree of the robbery charged or the intent to possess a deadly weapon" the majority opinion appears to water down these principles. The fact that no specific intent is made an element of the crimes for which the defendants were convicted, robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and kidnapping in the second degree in violation of General Statutes § 53a-94, does not remove the necessity for proof of a general intent to perform the acts which constitute the offense. *State* v. *Martin,* 189 Conn. 1, 13, 454, A.2d 256 (1983); *State* v. *Bitting,* 162 Conn. 1, 5, 291 A.2d 240 (1971). Unless it was the "conscious objective" of each defendant that he or another participant perform all of the acts necessary to constitute the particular crime, he would not be guilty of it. This requirement must extend to those acts which enhance the degree of the crime as well as to those which constitute the basic crime itself. Otherwise an accomplice might be convicted of an offense although he did not entertain the same mental state required by statute for conviction of the principal.

Although the bare recital by the trial court of the provisions of our accessory liability statute is hardly a sufficient explanation of the principles we have discussed, I agree that the deficiency in the charge is not of constitutional proportions. The manner in which the crimes were committed, including the presence of the defendants at the scene and their participation in what must have been a preconceived plan to rob the victim by using the gun they must have known that Faila possessed, is strongly persuasive that they shared his intention to perform the acts required for the crime of robbery in the first degree. The evidence is even more overwhelming with respect to the kidnapping offense in which they played the leading roles. The absence of a request to charge on accessory liability or an exception to the charge given is probably attributable to the judgment of trial counsel that no significant issue concerning the intention of the defendants in relation to their participation in the crimes was presented by the evidence. "In the absence of a request or an exception, to warrant reversal the error must consist of a failure to submit to the jury the essential ingredients of the offense on which the conviction rests; *Screws* v. *United States,* 325 U.S. 91, 107, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); see *State* v. *Reardon,* [172 Conn. 593, 602, 376 A.2d 65 (1977)]; or the case must involve plain error requiring such result in the interest of justice. Practice Book § 3063; *State* v. *Gelinas,* 160 Conn. 366, 279 A.2d 552 (1971); cf. Fed. R. Crim. Proc. 52 (b); *United States* v. *Clark,* [475 F.2d 240, 250 (2d Cir. 1973)]." *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). The record here does not support either of those grounds for ordering a new trial.