******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARQUIS J. HARPER
(AC 39300)

Alvord, Elgo and Pellegrino, Js.

*Syllabus*

Convicted of the crime of attempt to commit robbery in the first degree as
an accessory in violation of statute (§§ 53a-8 [a], 53a-49 [a] [2], and
53a-134 [a] [2]), the defendant appealed to this court. The defendant's
conviction stemmed from his alleged conduct in driving three individuals
to the home of a friend, B, the victim, in order to steal marijuana from
B. Upon arrival to B's home, the defendant stayed in his vehicle while
the three individuals approached the house. One individual, who was
armed with a pistol, began a physical altercation with a friend of B's,
who was exiting B's home at the time of the attempted robbery, and
when B went outside to assist his friend, B was shot in the neck,
which left him paralyzed from the chest down. On appeal, the defendant
claimed, inter alia, that the evidence adduced at trial was insufficient
to sustain his conviction and that the court improperly declined to
furnish a jury unanimity instruction as he had requested. *Held*:

1. The defendant could not prevail on his claim that his conviction of attempt
   to commit robbery in the first degree as an accessory was not supported
   by sufficient evidence and could not be sustained because it required
   proof that he knew or believed that one of his cohorts would be armed
   with a deadly weapon during the attempted robbery; precedent from
   our Supreme Court plainly indicates that the offense of robbery in the
   first degree in violation of § 53a-134 (a) (2) does not require proof that
   the defendant intended to possess or intended for an accomplice to
   possess a deadly weapon, and that the mens rea requirement for attempt
   to commit a crime shall be no different from the mens rea requirement
   for the commission of the crimes by the principal, and, thus, an accom-
   plice to an actual or an attempted robbery may be held criminally liable
   for his associate's display or threatened use of a purported weapon,
   even if he did not intend or even know that such display would occur, and
   the defendant did not offer a persuasive explanation for distinguishing
   between subsections (a) (1) and (a) (2) of § 53a-49, both of which
   proscribe intentional conduct on the part of a defendant in attempting
   to commit a criminal offense, and his claim that subsection (a) (2)
   contains an additional specific intent element of § 53a-49 was unavailing.

2. The defendant could not prevail on his claim that the trial court improperly
   declined to provide his requested instruction on jury unanimity with
   respect to reasonable doubt: the instructions provided by the court on
   both reasonable doubt and juror unanimity were sufficiently correct in
   law, adapted to the issues and provided ample guidance to the jury, and
   the requested instruction did not contain an accurate statement of the
   law, as it contravened the precept of reasonable doubt and the defen-
   dant's proposition that jurors must be instructed that unanimity is
   required on the nature or source of reasonable doubt was without legal
   support, the defendant having failed to provide any Connecticut author-
   ity to substantiate that novel assertion, and his reliance on federal case
   law having been plainly inapposite; accordingly, there was little likeli-
   hood that the instructions, considered as a whole, misled the jury into
   believing that the nature or source of their reasonable doubt had to be
   unanimously shared by all jurors, it was presumed that the jurors heeded
   the court's instructions, and in light of the particular facts of this case
   and mindful of the jury's obligation to construe the court's charge as a
   whole, there was no reasonable possibility that the trial court's charge
   misled the jury on the unanimity requirement.

Argued April 17—officially released August 7, 2018

*Procedural History*

Substitute information charging the defendant with
the crimes of conspiracy to commit robbery in the first
degree and attempt to commit robbery in the first

degree as an accessory, brought to the Superior Court in the judicial district of New Haven and tried to the jury before the court, *Alander, J.*; thereafter, the trial court granted a motion for a judgment of acquittal as to the conspiracy count; verdict and judgment of guilty of attempt to commit robbery in the first degree as an accessory, from which the defendant appealed to this court. *Affirmed.*

*Temmy Ann Miller*, assigned counsel, with whom, on the brief, was *Owen Firestone*, for the appellant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *John P. Doyle, Jr.*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, Marquis J. Harper, appeals from the judgment of conviction, rendered after a jury trial, of one count of attempt to commit robbery in the first degree as an accessory in violation of General Statutes §§ 53a-8 (a), 53a-49 (a) (2) and 53a-134 (a) (2). On appeal, the defendant claims that (1) the evidence adduced at trial was insufficient to sustain his conviction and (2) the court improperly declined to furnish a jury unanimity instruction requested by the defendant. We disagree and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. The defendant, Kevin Blackman, Marquis Winfrey, and Anthony Carmichael were smoking marijuana together in Hamden on the evening of July 1, 2010. When they later discussed how to obtain more marijuana, the defendant proposed robbing the victim, John Belcher. The defendant assured the others that the victim had marijuana at his residence.[1]

At that time, the four individuals were inside the defendant's vehicle. The defendant then placed a telephone call to the victim and confirmed that he was home. During that call, the defendant identified himself to the victim, who had never received a telephone call from the defendant. When that brief conversation concluded, the defendant drove his vehicle toward the victim's residence. Carmichael was seated in the front passenger seat, while Blackman and Winfrey were in the back of the vehicle.

The defendant parked his vehicle on Fawn Ridge Drive in Hamden, a dead end street 986 feet from the victim's residence. He positioned his vehicle on a corner pointed in the direction of Woodin Street; to do so, the defendant had to turn around his vehicle on that dead end street. The defendant, at that time, informed the others that he "just was the driver" and would stay with the vehicle.

While the defendant remained in the vehicle, Blackman, Winfrey, and Carmichael exited and walked to the victim's residence. Blackman and Winfrey wore black masks that concealed everything but their eyes. Blackman also wore what Winfrey testified was a "White Sox hat" and carried a firearm as he approached the residence. Kevin Russell, a friend of the victim, was exiting the residence as the men arrived. From his kitchen, the victim watched as a masked individual approached and began "tussling back and forth" with Russell. The victim came outside and noticed that the assailant was holding a gun. As he looked for an object to strike him with, the victim saw "a flash and [heard] a loud noise" and then fell face down to the ground. The victim sustained a gunshot wound to the neck,

which ultimately left him paralyzed from the chest down. At trial, Winfrey testified that he witnessed Blackman shoot the victim.

The assailants immediately fled the scene. Carmichael returned to the defendant's waiting car and the defendant began to drive away. The defendant also picked Blackman up as he was leaving the area and drove him home. Winfrey, who lived nearby on Fawn Ridge Drive, ran home on foot.

During their criminal investigation, the police recovered a Chicago White Sox baseball cap from the scene of the crime. Subsequent testing at the state forensic laboratory confirmed the presence of DNA belonging to Blackman on the cap. Blackman thereafter was arrested and charged with various crimes stemming from his involvement in the attempted robbery.[2] Winfrey also was arrested after the police learned of his alleged involvement in that incident. While in police custody, Winfrey provided a statement admitting his involvement therein. Winfrey, at that time, indicated that the defendant, Blackman, and Carmichael also were involved.[3]

When the police interviewed the defendant, he initially denied having any involvement in the attempted robbery and asked "who made a statement against him, what was said in the statement, and what other evidence [the police] had to implicate his involvement." Approximately thirty-seven minutes into that interview, the defendant admitted that he had driven Blackman, Winfrey, and Carmichael to Fawn Ridge Drive, but maintained that he did so "without knowledge of what was going to happen."

The defendant was arrested and charged with conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2) and attempt to commit robbery in the first degree as an accessory in violation of §§ 53a-8 (a), 53a-49 (a) (2) and 53a-134 (a) (2). A jury trial followed. After the state rested its case-in-chief, the defendant moved for a judgment of acquittal on the conspiracy count, claiming that the evidence was insufficient because there was no evidence, direct or circumstantial, that the defendant had agreed or intended that his coconspirators would use a firearm during the robbery. See *State* v. *Pond*, 315 Conn. 451, 489, 108 A.3d 1083 (2015). In response, the state conceded that although a firearm was used in the attempted robbery of the victim, "there wasn't any evidence that [the defendant] knew that there was a firearm present." The court agreed with the defendant, stating that because no such evidence was introduced at trial, the jury could not reasonably find "that element of the crime of conspiracy to commit robbery in the first degree" proven beyond a reasonable doubt. Accordingly, the court rendered a judgment of acquittal on the conspiracy charge. The defendant then rested without presenting any evidence.

After providing a detailed charge, the court submitted the remaining count of attempt to commit robbery in the first degree as an accessory to the jury. The jury found the defendant guilty and the court rendered judgment accordingly. The court thereafter sentenced the defendant to a term of fifteen years incarceration, execution suspended after five years, followed by a three year term of probation. From that judgment, the defendant now appeals.

I

The defendant first claims that the evidence adduced at trial was insufficient to sustain his conviction of attempt to commit robbery in the first degree as an accessory in violation of §§ 53a-8 (a), 53a-49 (a) (2) and 53a-134 (a) (2). He contends that a conviction of that offense requires proof that he knew or believed that one of his accomplices would be armed with a deadly weapon during the attempted robbery. Because it is undisputed that no such evidence was presented at trial, the defendant maintains that his conviction cannot stand. We disagree.

"In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support [its] verdict." (Internal quotation marks omitted.) *State* v. *Allan*, 311 Conn. 1, 25, 83 A.3d 326 (2014). In applying that test, "we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Stephen J. R.*, 309 Conn. 586, 594, 72 A.3d 379 (2013).

As the defendant notes in his principal appellate brief, the crux of his claim concerns the proper interpretation of the pertinent statutes underlying his conviction. Section 53a-8, which governs accessorial liability, provides in relevant part: "(a) A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender." The criminal offense at issue in the present case is robbery in the first degree. Section 53a-134 (a) (2), which defines that offense, provides that "[a] person is guilty of robbery in the first degree when, in the course of the commission of the crime of

robbery as defined in [General Statutes §] 53a-133 or of immediate flight therefrom, he or another participant in the crime . . . is armed with a deadly weapon . . . ." Section 53a-133, in turn, defines robbery as "when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny."[4] Lastly, § 53a-49 (a) (2) provides that "[a] person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." On appeal, the defendant claims that the offense of attempt to commit robbery in the first degree as an accessory in violation of §§ 53a-8 (a), 53a-49 (a) (2) and 53a-134 (a) (2) requires proof of an additional mental state—namely, that he believed that one of his accomplices would be armed with a deadly weapon.

In considering that claim, we do not write on a clean slate. Our Supreme Court has addressed the statutes in question on multiple occasions. That precedent plainly indicates that the offense of robbery in the first degree in violation of § 53a-134 (a) (2) does not require proof that a defendant intended to possess a deadly weapon. See *State* v. *Avila*, 223 Conn. 595, 609, 613 A.2d 731 (1992); *State* v. *Crosswell*, 223 Conn. 243, 261 n.14, 612 A.2d 1174 (1992); *State* v. *McCalpine*, 190 Conn. 822, 833, 463 A.2d 545 (1983). Furthermore, as our Supreme Court has observed, "the legislature [has] expressly provided and clearly intended that the mens rea requirement for . . . attempting to commit a crime shall be no different from the mens rea requirement for the commission of [the] crime by a principal." *State* v. *Pond*, supra, 315 Conn. 470. As a result, "[a]n accomplice to an actual or attempted robbery may be held criminally liable for his associate's display or threatened use of a purported weapon and thus convicted of the more serious crime of robbery in the second degree, even if he did not intend or even know that such a display would occur. . . . In defining the various degrees of the crime of robbery, the legislature has made a reasonable determination that, if an individual willingly participates in a robbery or attempted robbery, during which one of the perpetrators actually threatens the use of deadly force, that individual should be held criminally liable for the increased risk that injury or death will result, even if he did not specifically intend for the threat to be made." (Citation omitted; emphasis omitted.) Id.,

476. Accordingly, a conviction as an accessory to an attempted robbery in the first degree pursuant to §§ 53a-8, 53a-49 (a) (2), and 53a-134 (a) (2) does not require the state to demonstrate that the accused intended for an accomplice to possess a deadly weapon.

Also relevant is *State* v. *Harrison*, 178 Conn. 689, 690, 425 A.2d 111 (1979), which, like the present case, involved a conviction for the crime of accessory to an attempted robbery in the first degree. In outlining the elements essential to that crime, the court explained: "The state must prove beyond a reasonable doubt that the accused possessed the intent to commit the crime charged. The defendant here was charged with accessory to attempted robbery. The statutes governing that crime are [§§] 53a-8, 53a-49 (a) (2), and 53a-134 (a) (2). The accessory statute, § 53a-8, sets forth the element of intent as a twofold requirement: that the accessory have the intent to aid the principal and that in so aiding he intend to commit the offense with which he is charged. . . . The criminal attempt statute, § 53a-49 (a) (2), also has as an element the intent to commit the crime attempted. Finally, § 53a-134 (a) (2), robbery in the first degree, requires as an element of the crime the intent of the defendant to deprive another of property or to appropriate it to himself or a third person. See General Statutes §§ 53a-133 and 53a-119." (Citation omitted; emphasis omitted; footnotes omitted.) Id., 694. To convict a defendant as accessory to an attempted robbery in the first degree pursuant to those statutes, the court held that the state must "prove beyond a reasonable doubt that the defendant: (1) intended to aid the . . . principals in [the robbery], and (2) intended to deprive another of property." Id., 694–95.

Although the court in *Harrison* recognized that a violation of § 53a-134 (a) (2) required proof that a participant in the crime "is armed with a deadly weapon"; id., 694 n.4; the court did *not* hold that any particular mental state with respect thereto was required on the part of an accessory to that crime, a distinction that it emphasized four years later in *State* v. *McCalpine*, supra, 190 Conn. 822. After noting that *Harrison* involved a defendant "charged as an accessory to attempted robbery" in violation of §§ 53a-8, 53a-49 (a) (2), and 53a-134 (a) (2), our Supreme Court stated that "[c]ontrary to the defendants' allegations, [*Harrison*] imposed no requirement that the accessory [to the attempted robbery] possess the intent . . . to possess a deadly weapon." Id., 832–33. This court, as an intermediate appellate body, is bound by those previous judicial interpretations. See *State* v. *Bush*, 325 Conn. 272, 288–89, 157 A.3d 586 (2017); *State* v. *Carrillo Palencia*, 162 Conn. App. 569, 581 n.9, 132 A.3d 1097, cert. denied, 320 Conn. 927, 133 A.3d 459 (2016).

The defendant's attempt to distinguish between subsections (a) (1) and (a) (2) of § 53a-49, our criminal

attempt statute, is equally unavailing. Both proscribe intentional conduct on the part of a defendant in attempting to commit a criminal offense. Whereas subsection (a) (1) pertains to a defendant who "[i]ntentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them to be," subsection (a) (2) pertains to a defendant who "intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime." The defendant claims that the "circumstances as he believes them to be" language utilized in § 53a-49 (a) (2) "establishes an additional mental state requirement" that, as applied to the present case, necessitated proof that he believed that one of his accomplices was armed with a deadly weapon during the attempted robbery. We disagree. As our Supreme Court clarified in *State* v. *Pond*, supra, 315 Conn. 464, the possession or brandishing of a deadly weapon is not an attendant circumstance, but rather "is quintessential criminal conduct" that constitutes a "conduct element" of the criminal offense.[5] For that reason, the court explained that "if one participant decides to brandish a gun in what had been planned as an unarmed robbery, his accomplices may be convicted of robbery in the first degree for their role in the crime, regardless of their knowledge or intention with regard to the weapon." Id., 480.

Furthermore, the defendant, in arguing that § 53a-49 (a) (2) contains an additional specific intent element, has offered no persuasive explanation for so differentiating between subsections (a) (1) and (a) (2) of our criminal attempt statute. In this regard, we are mindful that in 2015, our Supreme Court recognized that "the legislature [has] expressly provided and clearly intended that the mens rea requirement for . . . attempting to commit a crime shall be no different from the mens rea requirement for the commission of [the] crime by a principal." *State* v. *Pond*, supra, 315 Conn. 470. In the years since that decision was published, the General Assembly has not seen fit to amend § 53a-49 (a) in any manner. Because the legislature is presumed to be aware of the court's interpretation of a statute, "its subsequent nonaction may be understood as a validation of that interpretation." (Internal quotation marks omitted.) *State* v. *Canady*, 297 Conn. 322, 333, 998 A.2d 1135 (2010).

In light of the foregoing, we reject the defendant's claim that his attempted robbery in the first degree as an accessory required proof that he knew or believed that one of his cohorts would be armed with a deadly weapon during the attempted robbery. His claim of evidential insufficiency, therefore, fails.

II

The defendant also claims that the court improperly declined his request to provide an instruction on jury unanimity with respect to reasonable doubt. We do not agree.

"The standard of review for claims of instructional impropriety is well established. [I]ndividual jury instructions should not be judged in artificial isolation . . . but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [in totality] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury. . . . A challenge to the validity of jury instructions presents a question of law over which [we have] plenary review." (Citation omitted; internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 528–29, 180 A.3d 882 (2018).

The following additional facts are relevant to the defendant's claim. At trial, the defendant submitted a request to charge, in which he sought, inter alia, an instruction on jury unanimity with respect to reasonable doubt. That proposed instruction stated: "A further point of clarification is necessary on the concept of reasonable doubt. You will recall that I have instructed you at the outset of this case that the jury's verdict must be unanimous. You are instructed that it is *not* necessary that jurors agree on the nature of or the source of the reasonable doubt. Moreover, it is not even necessary that the juror be able to explain or articulate what the reasonable doubt is. All that is required is that the jurors each agree that one (or more) reasonable doubt(s) exist(s) after a full review of the evidence or lack of evidence in the case. By way of example, each of the six jurors may have a different reason or reasons why he or she believes that the [s]tate has failed to prove its case beyond a reasonable doubt. As long as the jurors unanimously agree on the general proposition that the [s]tate has not proven its case beyond a reasonable doubt, the unanimity is achieved. There need not be unanimity on the underlying causes for such a belief." (Emphasis in original.)

The court held a charging conference on March 18, 2016, at which the defendant reiterated that request, arguing that "the unanimity required for the conviction is one thing, but . . . [the jurors] also have to be

instructed that they don't need to be unanimous in their—what their doubt might be. . . . [T]hey need to be told they don't need to agree as to why they don't want to convict." The state objected to that request,[6] and the court thereafter declined to furnish the requested instruction, stating: "I just don't think it's necessary, the reason being [that] the only time I tell [the jurors that] they need to be unanimous is on their verdict of guilty or not guilty. I don't refer to their need to be unanimous with respect to any other issue. So there's no reason for them to believe that they need to be unanimous on the issue of reasonable doubt. So I just don't think it's necessary. So for that reason, I decline to give it."

In its subsequent charge, the court instructed jurors that "the defendant is presumed to be innocent of each crime with which he has been charged. This presumption of innocence was with this defendant when he was presented for trial in this case. It continues with him throughout this trial unless and until such time as you, in the course of your deliberations, unanimously conclude that the state has overcome that presumption by proving him guilty beyond a reasonable doubt. . . . The state has the burden of proving that the defendant is guilty of the crime with which he is charged. The defendant has no burden in this case to prove he is not guilty or to present any evidence to disprove the charge against him. This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute the crime charged. It is not enough for the state to prove only certain of those elements, because if proof of even one element is lacking, you must find the accused not guilty." The court then provided a comprehensive instruction on reasonable doubt, the propriety of which is not contested in this appeal.[7]

Following a series of instructions on the elements of the charged offense, the court then provided an instruction to jurors on the issue of unanimity, stating: "I want to impress upon you that you are duty bound as jurors to apply the law as I outlined it, to determine the facts on the basis of the evidence as it has been presented, and then to render a verdict of guilty or not guilty as to the offense charged. *Your verdict must be unanimous.* There is no such thing as a majority vote of a jury in Connecticut. Rather, *you must all agree on the verdict.*" (Emphasis added.) The court continued: "When you are in the jury room, listen to each other and discuss the evidence and issues in the case among yourselves. Each of you has the duty to consult with one another and to deliberate in an effort to agree *unanimously on a verdict* if you can do so without violating your individual judgment and conscience. While each of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors, you should examine the issues and the evidence before you with

candor and frankness and with proper regard for the opinions of each other." (Emphasis added.)

The jury later returned a verdict in which it found the defendant guilty of attempt to commit robbery in the first degree as an accessory. In accepting that verdict, the court canvassed the jurors to confirm that "each of you do say unanimously that the defendant is guilty" of that criminal offense. All members of the jury responded affirmatively.

On appeal, the defendant claims that the court improperly declined to provide his requested instruction on jury unanimity. Relying on *State* v. *Casey*, 201 Conn. 174, 178, 513 A.2d 1183 (1986), he argues that the court was obligated to furnish that instruction because it "was relevant to the issues of the case and was an accurate statement of the law."

Contrary to the contention of defendant, we conclude that the requested instruction does not contain an accurate statement of the law. It is well established that reasonable doubt "must be based on reason . . . and if [a juror] cannot attribute a reason for it then . . . it is not a reasonable doubt." *State* v. *Moss*, 189 Conn. 364, 366, 456 A.2d 274 (1983); accord *State* v. *Coward*, 292 Conn. 296, 317, 972 A.2d 691 (2009) (reasonable doubt is doubt for which juror conscientiously can provide reason). The instruction requested by the defendant contravenes that precept, as it incorrectly states that "it is not even necessary that the juror be able to explain or articulate what the reasonable doubt is. All that is required is that the jurors each agree that one (or more) reasonable doubt(s) exist(s) after a full review of the evidence or lack of evidence in the case." As our Supreme Court has observed, "[a] trial court is under no obligation to give a requested jury instruction that does not constitute an accurate statement of the law." *State* v. *Wilson*, 242 Conn. 605, 628, 700 A.2d 633 (1997).

In addition, the proposition advanced by the defendant—that jurors must be instructed that unanimity is not required on "the nature or the source of the reasonable doubt"—is without legal support. The defendant has provided no Connecticut authority to substantiate that novel assertion, and the one federal case on which he relies is plainly inapposite. In *Mills* v. *Maryland*, 486 U.S. 367, 369, 108 S. Ct. 1860, 100 L. Ed. 2d 384 (1988), the United States Supreme Court considered the propriety of Maryland's capital punishment sentencing scheme. The court emphasized that "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make." Id., 383. For that reason, the court explained, "[i]n reviewing death sentences, the [c]ourt has demanded even greater certainty that the jury's conclusions rested on proper grounds." Id., 376. The court also recognized that "in a capital case . . . the sentencer may not refuse to consider or be pre-

cluded from considering any relevant mitigating evidence . . . ."[8] (Citations omitted; emphasis omitted; internal quotation marks omitted.) Id. 374–75.

After the defendant in *Mills* was found guilty of first degree murder, the sentencing phase of trial commenced, at which the defendant raised various mitigating circumstances. Id., 369–70. In its charge, the judge instructed jurors that they "must consider whether the aggravating circumstance . . . has been proven beyond a reasonable doubt. If you unanimously conclude that it has been so proven, you should answer that question yes. *If you are not so satisfied, then of course you must answer no.*" (Emphasis in original; internal quotation marks omitted.) Id., 378. On its verdict form, the jury subsequently "marked 'no' beside each referenced mitigating circumstance and returned a sentence of death." Id., 370. In light of the ambiguity in the court's instructions and the verdict form itself, the United States Supreme Court ultimately held that there was "a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all [twelve] jurors agreed on the existence of a particular such circumstance." Id., 384. For that reason, the court vacated the defendant's death sentence and remanded the matter for further proceedings. Id.

The present case is both contextually and factually distinguishable from *Mills*. This is not a capital case, at which an "even greater" measure of scrutiny applies. Id., 376. Nor is this a case in which the court's instructions, considered as a whole, likely led jurors to believe that the basis for reasonable doubt on the part of an individual juror had to be shared by all members of the jury. To the contrary, the court's instructions repeatedly apprised jurors that their *verdict* must be unanimous, stating in unequivocal terms that "you must all agree on the verdict" and "[y]our verdict must be unanimous." At the same time, the court in its instructions emphasized that each juror was obligated "to deliberate in an effort to agree unanimously on a verdict if you can do so without violating *your individual judgment and conscience. . . . [E]ach of you must decide the case for yourself and not merely acquiesce in the conclusion of your fellow jurors . . . .*" (Emphasis added.) We must presume that the jurors heeded those instructions. See *State* v. *Parrott*, 262 Conn. 276, 294, 811 A.2d 705 (2003). Accordingly, in contrast to *Mills*, there is little likelihood that the instructions in the present case misled the jury into believing that the "nature or the source of [their] reasonable doubt" had to unanimously be shared by all jurors.

In his request to charge, the defendant cited to *Dunn* v. *Perrin*, 570 F.2d 21 (1st Cir. 1978), cert. denied, 437

U.S. 910, 98 S. Ct. 3102, 57 L. Ed. 2d 1141 (1978), and *State* v. *Moss*, supra, 189 Conn. 364, in support of his proposed instruction. As the trial court noted during its charging conference, neither case has any relevance to the issue of unanimity among jurors, and the defendant on appeal has abandoned his reliance on those decisions. Furthermore, the defendant has provided no authority indicating that any jurisdiction has adopted the proposition advanced by him—that jurors in a criminal trial must be instructed that unanimity is not required on "the nature or the source of the reasonable doubt." For that reason, and in light of the court's observation that "the only time I tell [the jurors that] they need to be unanimous is on their verdict of guilty [and] I don't refer to their need to be unanimous with respect to any other issue," the court concluded that the requested instruction was unnecessary. We concur with that determination. On the particular facts of this case, and mindful of our obligation to construe the court's charge as a whole; *State* v. *Jones*, 320 Conn. 22, 53, 128 A.3d 431 (2015); we are not persuaded that there is any reasonable possibility that the trial court's charge misled the jury on the unanimity requirement. The instructions provided by the court on both reasonable doubt and juror unanimity were sufficiently correct in law, adapted to the issues and provided ample guidance to the jury. The defendant, therefore, cannot establish instructional error on the part of the trial court.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At trial, the victim testified that he knew the defendant's family "very well" and played basketball with the defendant at a local park. The victim further testified that, on those occasions, he smoked marijuana with the defendant.

[2] Blackman ultimately pleaded guilty to conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 and 53a-59 (a) (1), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2) and criminal possession of a firearm in violation of General Statutes § 53a-217.

[3] At trial, Winfrey testified that he subsequently pleaded guilty to conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-48 stemming from his involvement in the attempted robbery of the victim.

[4] "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. . . ." General Statutes § 53a-119.

[5] In *State* v. *Pond*, supra, 315 Conn. 461–62, the court discussed "the well established, if somewhat arcane, distinction between three types or categories of essential elements that define each criminal offense: conduct, results, and attendant circumstances." The court contrasted "conduct elements," such as "the brandishing of a weapon," from "attendant circumstances," such as "circumstantial features of the weapon used (e.g., whether a firearm is registered or operational)." Id., 462.

[6] During the charging conference, the prosecutor stated in relevant part: "If a juror has a reasonable doubt . . . they're going to have that for whatever underlying reasons they are going to have. There's no support or authority in the case [law] that we need to tell them well, if you have a different type of reasonable doubt, then this one has a different type of reasonable doubt, then we run into problems, and I'm concerned about the other way too. If you don't have a reasonable doubt, then I'm thinking well, I've got to sit and explain why I don't have a reasonable doubt versus this one on

reasonable doubt. There's no authority in the law for it."

[7] The court stated: "[T]he state has the burden of proving the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. Some of you may be aware that in civil cases, jurors are told that it is necessary to prove only that a fact is more likely true than not true. In criminal cases, the [state's] proof must be more persuasive than that. It must be beyond a reasonable doubt. A reasonable doubt is an honest and reasonable uncertainty in your minds about the guilt of the defendant after you have given full and impartial consideration to all of the evidence. A reasonable doubt may arise from the evidence itself or from a lack of evidence.

"In this world, we know very few things with absolute certainty. In criminal cases, the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you are not firmly convinced of the defendant's guilt, you must give the defendant the benefit of the doubt and find him not guilty."

[8] Under the sentencing scheme at issue in *Mills*, "if the sentencer finds that any mitigating circumstance or circumstances have been proved to exist, it then proceeds to decide whether those mitigating circumstances outweigh the aggravating circumstances and sentences the defendant accordingly." *Mills* v. *Maryland*, supra, 486 U.S. 375.