STATE OF CONNECTICUT v. JOHN COULOMBE

INGLIS, C. J., O'SULLIVAN, WYNNE, DALY and COMLEY, JS.

Argued June 11—decided July 17, 1956

*Daniel E. Brennan, Jr.,* with whom were *James J. A. Daly* and *Thomas F. Seymour,* for the appellant (defendant).

*Otto J. Saur,* assistant state's attorney, with whom, on the brief, was *Lorin W. Willis,* state's attorney, for the appellee (state).

DALY, J. The defendant was charged in the information with wilfully and unlawfully causing and permitting a nine-year-old girl, the complaining witness in this case, to be placed in such a situation that her morals were likely to be impaired and with doing certain acts likely to impair her morals, in violation of the provisions of § 8369 of the General Statutes. The crime was alleged to have been committed on June 19, 1955. The case was tried to the court. The defendant was found guilty and has appealed from the judgment. In his assignment of error he claims that the trial court erred in concluding, upon all of the evidence, that he was guilty of the crime charged beyond a reasonable doubt.

The complaining witness testified at the trial, in September, 1955, that she had reached the age of ten years on the sixth day of that month; that she lived with her mother, father, two younger sisters and a younger brother in an apartment in building 2 of the Beardsley Terrace Apartments in Bridgeport; that sometime between 11 a.m. and 4 p.m. on a Sunday in June of that year she was playing with her sisters in the lobby of the building in which she lived; that two other girls were in the lobby; that the defendant entered the lobby; that she and her sisters went into the adjoining playroom; that the defendant entered the playroom and shortly thereafter her sisters went out to the lobby; that while she and the defendant were the only persons in the playroom he closed the door to the lobby, "pulled up my dress and put down my pants . . . and then put his hands in my pants . . . [b]etween me"; that he

touched her flesh and moved his hands back and forth for a short while, hurting her; that he told her not to tell anyone, not even her mother and father; that he looked at his watch and said it was 4 o'clock; and that then he left the building.

The complaining witness testified, also, that the next morning, while in the bathroom, she felt pain and then told her mother what had happened the previous day, and that after school that day she and her mother reported the incident to the tenant supervisor of the Beardsley Terrace housing project. The special police officer employed at the project testified that he was present and heard part of the conversation; that shortly thereafter, in the apartment where the complaining witness lived, he talked with her and "[s]he told me she was downstairs in the playroom in Building 2 'yesterday afternoon' referring to Sunday, June 19th, and a man that she thinks works for the housing lifted her dress up and pulled down her panties and put his hand on the front of her body." He testified, also, that she gave him a description of the man and told him that the man looked at his watch, spoke about its being almost time for him to go "home and eat," and told her not to tell anyone, "not even your own mother and father." The defendant concedes that on Thursday, June 23, at the Bridgeport police headquarters, the complaining witness, upon seeing him, said: "That is the man." While testifying at the trial, she identified the defendant as her assailant and described the clothes and belt he wore at the time the alleged crime was committed, the kind of watch he had and the bumps on his forehead and neck. A physician who examined her on Thursday, June 23, testified that he then found swelling around the opening of the urethra and inflammation or irritation

"that would result from any traumatic means, such as friction from one sort or another and this could have resulted from any smooth object—not a rough"; that it could have resulted from the use of a finger or fingers; and that the injuries could reasonably have been caused by friction on Sunday, June 19, as a result of the occurrence described by the complaining witness.

The defendant testified that he was a watchman at the Beardsley Terrace housing project; that as part of his duties he regularly checked the play-rooms in the buildings; that he was in the building in question on his second round between 2 and 4 p.m. on Sunday, June 19; and that he did not commit the act of which he was accused. He contends that, as a matter of law, the testimony of the complaining witness was so contradictory in essentials and so implausible that it could not be accepted by the trier as credible; that, as a matter of law, a finding of guilty beyond a reasonable doubt cannot be sustained, because her testimony is uncorroborated and because she failed to make prompt complaint or outcry, although ample opportunity was available to her, and no explanation was given for her failure; that the trial court erred in applying the law pertaining to corroboration; that the failure of the state to offer available corroborative evidence raises an inference that it would have been unfavorable to the credibility of the complaining witness; that this inference, as a matter of law, prevents a finding of guilty beyond a reasonable doubt; and that the substantial controverting evidence establishes, as a matter of law, a reasonable doubt that the alleged incident ever occurred.

"We have repeatedly held that the power to accord or deny credibility to a witness is an exclusive

function of the trier." *Armstrong* v. *Watrous,* 138 Conn. 127, 129, 82 A.2d 800; *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358; *Morgan* v. *Keefe,* 135 Conn. 254, 258, 63 A.2d 148; *Neville* v. *Yaknunas,* 132 Conn. 627, 630, 46 A.2d 342. Where reasoning minds may differ on disputed evidence, we cannot disturb the trial court's conclusion. *Trenchard* v. *Trenchard,* 141 Conn. 627, 631, 109 A.2d 250. "The trial court is at liberty to discredit any witness or multitude of witnesses, if it deems that it has cause to do so. It is one of the important functions of a trier to determine the relative credit to be given to oral evidence." *Allis* v. *Hall,* 76 Conn. 322, 340, 56 A. 637; *Eastern Sportswear Co.* v. *S. Augstein & Co.,* 141 Conn. 420, 422, 106 A.2d 476; *Dexter Yarn Co.* v. *American Fabrics Co.,* 102 Conn. 529, 541, 129 A. 527. The trial court is the final judge of credibility and may disbelieve a witness as to part of his or her testimony and accept it in other respects. *Corvo* v. *Waterbury,* 141 Conn. 719, 724, 109 A.2d 869; *Clark* v. *Haggard,* 141 Conn. 668, 674, 109 A.2d 358.

"The testimony of the complaining witness, if credible, was conclusive of the commission of the crime. It was for the trial court to determine the credibility of her testimony and we cannot hold that it acted unreasonably in believing her. . . . [W]hile, in such cases, the trial court should weigh the credibility of the complainant with care, it is not the law that corroboration is essential to the proof of guilt. . . . Crimes of this nature are not often committed in the presence of witnesses. The credibility of the testimony is peculiarly for the trial court in such a case and, with its opportunity to observe the witnesses on the stand, its conclusion rarely may be disturbed." *State* v. *Chuchelow,* 131 Conn. 82, 83, 37 A.2d 689; *State* v. *Rybczyk,* 133 Conn. 598, 600,

53 A.2d 295; *State* v. *Zimnaruk,* 128 Conn. 124, 126, 20 A.2d 613; *State* v. *Lattin,* 29 Conn. 389. Furthermore, while in cases of this kind corroboration is not essential to the proof of guilt, there was corroboration of the complainant's testimony in the instant case.

The defendant asserts that the evidence controverting the complainant's accusation was substantial and, as a matter of law, establishes a reasonable doubt that the incident ever occurred. This claim amounts to nothing more than a request to us to accept, upon the conflicting evidence presented at the trial, his version of the facts. He really seeks to have us retry the case on the evidence. This we cannot do. *Hudick* v. *Tycz,* 142 Conn. 715, 718, 118 A.2d 306; *Ball* v. *Branford,* 142 Conn. 13, 15, 110 A.2d 459. As has been previously stated, it is for the trier to pass upon the credibility of witnesses. The case presented controversial issues of fact which were solely within the province of the trial court to decide. *Katz* v. *Martin,* 143 Conn. 215, 217, 120 A.2d 826.

There is no error.

In this opinion the other judges concurred.