STATE OF CONNECTICUT *v.* JOSEPH L. GRANT
(2211)

DUPONT, C. J., BORDEN and SPALLONE, Js.

Argued November 7, 1985—decision released January 14, 1986

*Joseph G. Bruckmann,* assistant public defender, with whom, on the brief, was *Joette Katz,* public defender, for the appellant (defendant).

*Michael E. O'Hare,* deputy assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Rosita Creamer* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

BORDEN, J. The defendant was found guilty by a jury of attempted burglary in the third degree, in violation of General Statutes §§ 53a-49 and 53a-103.[1] The judgment of conviction followed his guilty plea to being a persistent serious felony offender. He appeals, claiming (1) that the evidence was insufficient to support the conviction, (2) that there were several errors in the jury charge, and (3) that he was not afforded effective assistance of trial counsel. The dispositive issue on appeal is whether the failure of the court to define in its jury charge the essential statutory element of an "unlawful" entry was reversible error. We hold that it was, and remand for a new trial.

The jury could reasonably have found the following facts: The premises in question were the apartment of the defendant's sister, Brenda Fowora, and brother-in-law, John Fowora, who were in the process of separating. His sister no longer lived at the apartment and had, on the morning of the crime, removed the last of her possessions. Earlier, when the defendant learned that his sister was moving, he asked her what property she was taking with her. She told him that she was taking everything but a few of her husband's belongings including his television set, stereo and video recorder. The defendant had visited the Fowora apartment previously and had seen these items.

---

[1] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters and remains unlawfully in a building with intent to commit a crime therein."

General Statutes § 53a-100 (b) provides: "The following definition is applicable to sections 53a-101 to 53a-106, inclusive: A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and when the actor is not otherwise licensed or privileged to do so."

At noon of the day in question, the defendant entered the apartment building through the main doors. He was seen by a neighbor and the neighbor's friend who were standing outside of the building at the time. Fifteen minutes later, the defendant exited the building and asked the neighbor's friend for a screwdriver. The friend gave a screwdriver to the defendant, who reentered the building. A few minutes later, the neighbor went to the rear of the building to look for her daughter. She saw the defendant standing at the window of the Fowora apartment fidgeting with the bottom part of the window. He did not appear to be repairing the window. The neighbor, by now believing that the defendant was attempting to break into the apartment, returned to her apartment and called the office supervisor of the building complex. The supervisor called the police and dispatched the building superintendent to investigate. The superintendent found the defendant inside the building sitting on the floor next to the door of the Fowora apartment. When asked what he was doing there, the defendant said he was waiting for his sister.

The police officer arrived and found the defendant sitting on the stairs inside the building holding a screwdriver. The officer took the screwdriver from him and asked what he was doing. The defendant replied that his sister had asked him to repair a screen and that she would be returning shortly. The officer and the defendant went to the rear of the building where the defendant pointed out the repair which he claims he had made. There was a tear in the screen, which was tied to the frame with yarn. This repair would not have required a screwdriver and the defendant did not explain his need for one. There were recently made scratches on the lower portion of the metal window frame which appeared to have been made by an attempt to jimmy the window from the frame.

John Forowa testified that the defendant had no right to be in the apartment. Neither Brenda Fowora nor John Fowora had requested him to make any repairs to the apartment. Brenda Fowora had neither asked nor expected the defendant to come to the apartment. He had not told her that he would come to the apartment.

I

## Jury Charge on Attempted Burglary

We first consider the defendant's claim that the court erred by neglecting to define the statutory phrase, "enters . . . unlawfully," as an essential element of the offense of attempted burglary in the third degree. See footnote 1, supra. Because the defendant neither filed any request to charge nor excepted to the charge as given, our inquiry on this claim is circumscribed by the boundaries of the by now all too familiar *Evans* bypass. *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Lopez,* 5 Conn. App. 599, 602–603, 502 A.2d 418 (1985).

"[O]ur *Evans* inquiry in this case has three prongs: (1) whether the record supports the defendant's claim that the charge raises a question of fundamental constitutional dimension; (2) if so, whether there was error; and (3) if there was error, whether it requires reversal. . . . In cases involving claimed error in the judge's charge to the jury, the ultimate issue is whether it was reasonably possible that the jury was misled"; *State* v. *Lopez,* supra, 603; "into misunderstanding an issue that has fundamental constitutional significance." *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985).

The defendant claims specifically that the court, in charging the jury on the elements of the underlying crime of burglary, did not read the statutory definition

of the essential element that the defendant enter the premises "unlawfully," and did not explain, either directly or indirectly, the meaning of that element. A claim that a jury charge omitted an essential element of the crime charged raises an issue of fundamental constitutional dimension. *State* v. *Maltese,* 189 Conn. 337, 341–42, 455 A.2d 1343 (1983); *State* v. *Hilliard,* 3 Conn. App. 339, 342, 488 A.2d 463 (1985). The record adequately supports the claim, indicating that the court did not read and explain to the jury the statutory definition of the essential element of an unlawful entry. General Statutes § 53a-100 (b). We turn, therefore, to the question of whether it was reasonably possible that the error misled the jury.

The entire portion of the charge on the definition of burglary in the third degree is as follows: "The Burglary Statute reads,—It is a very short Statute. 'A person is guilty of Burglary in the Third Degree when he enters or remains unlawfully in a building with the intent to commit a crime therein.' Now, the elements for the commission of a burglary are these. He enters or remains unlawfully in a building. Enters or remains (1) building; (2) with intent to commit a crime therein. That is the Burglary Statute." Thus, the court did tell the jury twice that an entry must be unlawful. The court failed, however, to read the definition of that term and to explain it further.

We recognize that we must consider the substance rather than the form of the challenged instruction; *State* v. *Zayas,* 195 Conn. 611, 617, 490 A.2d 68 (1985); and that the instruction must be examined with reference to the factual issues in the case. *State* v. *Torrence,* 1 Conn. App. 697, 705, 476 A.2d 598 (1984), aff'd., 196 Conn. 430, 493 A.2d 865 (1985). We conclude nonetheless that, because the court told the jury that unlawfulness was an element but did not explain its meaning, it is reasonably possible that the jurors were misled into

believing that they should apply their common understanding of the term and, thus, were misled into misunderstanding an issue which has constitutional significance. See *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985).

"A person 'enters or remains unlawfully' in or upon premises when the premises, at the time of such entry or remaining, are not open to the public and *when the actor is not otherwise licensed or privileged to do so.*" (Emphasis added.) General Statutes § 53a-100 (b).[2] Although the separate terms, "licensed" and "privileged," have occasioned some comment in our civil precedents; see, e.g., *Miller* v. *Grossman Shoes, Inc.,* 186 Conn. 229, 237, 440 A.2d 302 (1982) (license); *Hartford* v. *Powers,* 183 Conn. 76, 83 n.2, 438 A.2d 824 (1981) (privilege); their meaning as used in General Statutes § 53a-100 (b) has not been articulated.

When used in the context of an entry on land or premises, the two terms do not have mutually exclusive meanings. Rather, their meanings blend together. "A *license* in real property is defined as a personal, revocable, and unassignable *privilege,* conferred either by writing or parol, to do one or more acts on land without possessing any interest therein." (Emphasis added.) 25 Am. Jur. 2d, Easements and Licenses § 123. Generally, a license to enter premises is revocable at any time by the licensor. Id., § 128. It is exercisable only within the scope of the consent given. *Miller* v. *Grossman Shoes, Inc.,* supra. The term, "privilege," is more general. It is " 'a right or immunity granted as a peculiar benefit, advantage, or favor; special enjoyment of a good or exemption from an evil or burden; a peculiar or personal advantage or right esp. when enjoyed in derogation of common right; prerogative.' " *Hartford*

---

[2] The defendant does not claim, of course, that the Fowora apartment was open to the public. That phrase, therefore, is not involved in this decision.

v. *Powers,* supra, quoting Webster, Third New International Dictionary. It is a "right peculiar to an individual or body. . . . An advantage held by way of *license,* franchise, grant, or permission, not possessed by others. . . . An immunity existing under the law." (Emphasis added.) Ballentine's Law Dictionary.

The phrase, "licensed or privileged," as used in General Statutes § 53a-100 (b) is meant as a unitary phrase, rather than as a reference to two separate concepts. This conclusion is buttressed by reference to the New York Penal Law, on which much of our penal code is based. *State* v. *Privitera,* 1 Conn. App. 709, 721 n.8, 476 A.2d 605 (1984). Our statutory definition of the phrase, "enters or remains unlawfully," is drawn directly from § 140.00 of the New York Penal Law. "For a discussion of what constitutes a license or privilege to enter or remain upon premises," the commentary to the New York law points to chapter 8 of the Restatement of Torts (Second), entitled "Privileged Entries on Land." N.Y. Penal Law § 140.00 (McKinney's 1975); Hechtman, Practice Commentaries § 140.00, p. 15. Thus, the Restatement of Torts supplies an additional although not the exclusive source for the resolution of whether, in any particular case, a person's entry on premises was unlawful within the meaning of General Statutes § 53a-100 (b).

In general, a license or privilege to enter premises may derive from a transaction between the possessor and the actor, or may arise irrespective of any such transaction. Examples of those that arise from such a transaction involve situations in which there is a present consent, or there was a past consent, creating a license to enter. Examples of those that arise irrespective of previous transactions between the parties involve situations in which the possessor acted tor-

tiously toward the actor, or when public policy creates the license or privilege. See 1 Restatement (Second), Torts, p. 307–308 (chapter 8 scope note).

Whether an entry on premises is "unlawful" within the meaning of General Statutes § 53a-100 (b) is a question of fact for the jury. The jury must, however, be fully and properly instructed on the applicable rules of law governing that question. The trial court is obligated, in discharging its function of instructing the jury on the law, to explain those rules of law which are applicable to the facts of the particular case. See *State* v. *Preyer,* 198 Conn. 190, 199–200, 502 A.2d 858 (1985). The court did not do so here.

We agree with the state that, on the evidence presented, the only possible license or privilege of the defendant was that he had consent, express or implied, to enter the apartment. Thus, the state's burden, in establishing that his attempted entry was unlawful, was to prove that no such consent had been given. The critical flaw in the court's charge, however, is that it never told the jury, either directly or indirectly, that the state had such a burden. Nowhere in the charge, either in its explanation of the law or in its recitation of the evidence, did the court advert either to this burden on the state or to the testimony of the Foworas that the defendant had no such consent.

At best, therefore, the jurors were left with their own common understanding of the meaning of the term, "unlawful." That meaning, according to Webster, Third New International Dictionary, is either "contrary to or prohibited by law," which is too general to be useful, or "contrary to normal or acceptable procedure: irregular . . . not morally right or conventional," which is simply not the same as the technical meaning of the term as used in General Statutes § 53a-100 (b).

Thus, this case is unlike *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977), relied on by the state, in which the Supreme Court held that a failure to give a statutory definition of an essential element is not error when that definition substantially coincides with its ordinary meaning. See also *State* v. *Hilliard,* supra, 341 n.3. In this case, it is reasonably possible that the failure of the court to define the phrase, "enters unlawfully," misled the jury into misunderstanding the meaning of an essential element of the crime charged.

This conclusion renders it necessary to consider only one other claim of the defendant on appeal, namely, that the evidence was insufficient as a matter of law to support the verdict. It is necessary to consider this claim because, if the evidence was insufficient, the state would be barred by double jeopardy principles from retrying the defendant, and he would be entitled to a judgment of acquittal rather than a new trial. *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978).

## II

### Sufficiency of Evidence

The defendant claims that the evidence was insufficient for the jury to find that he intended to commit a crime in the apartment, and to find that his attempted entry was unlawful. We disagree.

The defendant knew that his sister was moving from the apartment leaving her husband's television set, video recorder and stereo, which the defendant had seen and which he knew would be virtually the only items left in the apartment. He was attempting to enter the apartment through a back window, hardly a normal point of entry even for the dwelling of one's sibling. His lies to the building superintendent and police

officer about his sister's request to repair the screen and about her intent to return shortly evidence a consciousness of guilt. See *State* v. *Fullard,* 5 Conn. App. 338, 342, 497 A.2d 1041 (1985). "To any person of ordinary intelligence, the expected by-product of a surreptitious unlawful entry into the home of another is theft. *People* v. *Johnson,* 28 Ill. 2nd 441, 443, 192 N.E.2d 864 (1963); *Commonwealth* v. *Eppich,* 342 Mass. 487, 493, 174 N.E.2d 31 (1961). The . . . [scratch] marks on the window . . . bespeak criminal purpose." *State* v. *Zayas,* 195 Conn. 611, 617–18, 490 A.2d 68 (1985).

In *State* v. *Zayas,* supra, 617, the Supreme Court aptly noted: "Common experience tells us that an unlawful entry into a dwelling at night through a window is not without purpose. Nor are people accustomed to enter homes of strangers through a window for innocent purposes." To be sure, this attempted entry was in the daytime and did not involve the home of strangers. While those two differentiating factors might, under some circumstances, persuade a jury that an attempted entry was with benign or at least noncriminal intent, they do not render the evidence of this attempted entry insufficient as a matter of law, particularly where, as here, "[t]here is no evidence which suggests otherwise." Id., 618.

The defendant's claim that the evidence was insufficient to support a finding that his attempted entry was unlawful, is without merit. As we have already indicated, under the facts of this case, the state's burden on this element of the offense amounted to proving that the defendant had no consent, express or implied, to enter the apartment. There was evidence from which the jury could find that he had no present consent from either his sister or brother-in-law to be in the apartment. The jury could also reasonably conclude that his

past visits to the apartment in the presence of his sister and brother-in-law did not carry any implied consent to enter in their absence.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.