### State of Connecticut *v.* John Newton (3244)

Dupont, C. J., Hull and Daly, Js.

Argued May 2—decision released August 19, 1986

*Joette Katz,* public defender, with whom, on the brief, were *Joseph G. Bruckmann,* assistant public defender, and *Anna Martin-Tsoupas,* law student intern, for the appellant (defendant).

*Bernadette Conway,* special deputy assistant state's attorney, with whom, on the brief, were *Arnold Markle,*

state's attorney, and *Susann E. Gill,* deputy assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant was convicted of sexual assault in the first degree, in violation of General Statutes § 53a-70,[1] and risk of injury to a minor, in violation of General Statutes § 53-21.[2] The defendant has appealed from the judgment rendered on the conviction.[3] His claims of error relate to the propriety of the court's instructions to the jury. The first issue in this case is whether the trial court erred in instructing the jury on the two types of conduct which can constitute a violation of General Statutes § 53-21, when the defendant was charged only with one. A second issue is whether the court erred in its instructions to the jury on the "threat of use of force" portion of General Statutes § 53a-70.

The jury could reasonably have found the following facts. The victim, who was nine years old at the time of the offense, lived with her mother, two older sisters and the infant child of one of the sisters. The defendant was the boyfriend of the victim's mother and occasionally stayed overnight at the victim's house.

[1] General Statutes § 53a-70 provides: "(a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

[2] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[3] The defendant was sentenced to a definite term of ten years on the sexual assault in the first degree charge, and to a concurrent term of five years on the risk of injury to a minor charge.

On the day of the offense, while one of the older sisters was asleep in one bedroom; the defendant asked the victim, in another bedroom, if she would perform oral sex on him. The defendant held her by the arm so she could not get away, pulled her clothes up and down, touched and sucked her breasts and put his fingers on and inside her vagina. After this incident, the victim told her sister, who contacted her mother. A medical examination of the victim approximately one and a half to two weeks after the incident revealed that the victim had a one by two centimeter hole in the hymen of her vagina. This was consistent with the size of a finger but could also have occurred in the normal development of the child.

The defendant was initially charged by an information, dated April 7, 1983, which contained two counts, sexual assault in the first degree and risk of injury to a minor. Neither of those counts was particularized, and the offense of risk of injury was charged generally and included both statutory alternatives. On May 9, 1983, the day the trial began, the state filed a substituted information which, by its language, limited the manner in which the crime of risk of injury was alleged to have been committed. The substituted information specified the date, time and place of the alleged incident, and relied upon only one of the two statutory alternatives set forth in General Statutes § 53-21. In the substituted information, the state charged the defendant with risk of injury to a minor in that the defendant "did an act likely to impair the health or morals of [the victim], a child under the age of sixteen, in violation of Section 53-21 of the Connecticut General Statutes."

The defendant's first claim of error is that the trial court erroneously enlarged the crime with which he was charged by reading General Statutes § 53-21, in its entirety, in its opening remarks at the beginning of the

trial and by instructing the jury on the entire statute at the conclusion of the trial. At neither time did the trial court explain to the jury that the defendant had been charged with only one portion of the statute.

The state concedes that the trial court erred in instructing the jury on the portion of General Statutes § 53-21 which was not charged. It argues, however, that because the defendant has not demonstrated that the charge prejudiced his defense and resulted in substantial injustice, he should not prevail on appeal.

The defendant did not properly preserve this issue in the trial court by taking an exception to the charge. Practice Book § 854. His claim is reviewable only if the record supports his contention that a fundamental constitutional right is involved. *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973); *State* v. *Delgado,* 8 Conn. App. 273, 276, 513 A.2d 701 (1986).

An appellate court must ask a series of questions when an *Evans* claim is made and answer each in the affirmative before continuing to the succeeding question. These questions are as follows: (1) is there an issue raised which facially implicates a constitutional right; (2) is the record sufficient to consider that constitutional claim on its merits; (3) was there, in fact, based on the record, a deprivation of a constitutional right of a criminal defendant; and (4) did the deprivation deny the defendant a fair trial, thereby requiring that the judgment rendered following a conviction by a jury be set aside. The first two questions relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. In cases involving a jury instruction where the claimed constitutional deprivation is the enlargement of the crime of which the defendant is accused, the ultimate question is whether it is reasonably possible that the jury was

misled. *State* v. *Torrence,* 196 Conn. 430, 436, 493 A.2d 865 (1985); *State* v. *Grant,* 6 Conn. App. 24, 27, 502 A.2d 945 (1986).

"A defendant is constitutionally entitled 'to be informed of the nature and cause of the accusation' against him. Conn. Const., art. I § 8; U.S. Const., amend. VI. 'Nothing is more elementary in criminal law than that an accused is required to defend only against the charge alleged.' *State* v. *Genova,* 141 Conn. 565, 572, 107 A.2d 837 [1954] (opinion of *O'Sullivan, J.,* dissenting)." *State* v. *Ruiz,* 171 Conn. 264, 269–70, 368 A.2d 222 (1976). When an information sufficiently sets out the offense with which a defendant is charged, "the state is limited to proving that the defendant has committed the offense in substantially the manner described." Id., 270. The purpose of this limitation is to ensure (1) that a defendant is informed of the nature of the crime charged to enable him to prepare his defense and to avoid prejudicial surprise, and (2) that future criminal proceedings for the same offense will be avoided. *State* v. *Franko,* 199 Conn. 481, 490, 508 A.2d 22 (1986). Accordingly, the defendant's claim of enlargement does implicate a fundamental constitutional right. The next question is thus whether the record is sufficient to consider his claim on its merits.

General Statutes § 53-21 proscribes "two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare; see *State* v. *Smith,* 149 Conn. 487, 181 A.2d 446 [1962]; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. See *State* v. *Coulombe,* 143 Conn. 604, 124 A.2d 518 [1956]; *State* v. *Silver,* 139 Conn. 234, 93 A.2d 154 [1952]." *State* v. *Dennis,* 150 Conn.

245, 250, 188 A.2d 65 (1963); *State* v. *Apostle,* 8 Conn. App. 216, 242, 512 A.2d 947 (1986).

In its opening remarks to the jury and in its charge at the conclusion of the trial, the trial court read or paraphrased the uncharged portion of General Statutes § 53-21 five times. It repeatedly stressed that a conviction under that statute would require the jury to conclude, first, that the child was under sixteen years of age and, second, *either* that the child was placed in a situation wilfully or unlawfully, so that her life or limb was in danger or her health likely to be injured or her morals likely to be impaired, *or* that acts were directly perpetrated on her person which were injurious to her moral or physical well-being.[4] The court not only read the inapplicable portion of the statute, but also discussed this alternative mode for committing the crime. See *State* v. *Carter,* 189 Conn. 631, 645–46, 458 A.2d 379 (1983). Applying the criteria of *State* v. *Evans,*

---

[4] In its opening remarks to the jury, the trial court stated: "As to the second count, a person violates a section of the law, risk of injury to a minor, if that person wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any child. The questions you have to decide are, was the child . . . under the age of sixteen? Was that child placed in a situation wilfully or unlawfully so that her life or limb was in danger or her health likely to be injured or her morals likely to be impaired, or was there any act done by the defendant likely to impair her health or morals?"

In its charge at the conclusion of the trial, the court read the entire risk of injury statute and stated that the jury must answer two questions: (1) whether the child was under the age of sixteen; and (2) whether the state had proven beyond a reasonable doubt that the the child was "placed [by the defendant] in a situation wilfully or unlawfully so that her life or limb was endangered or her health likely to be injured, or her morals likely to be impaired, or was there any act done by the defendant to her likely to impair her health or morals . . . . There are two types of behavior which the second element describes. The first is the deliberate indifference to, acquiescence in, or the creation of a situation harmful to the child's moral or physical welfare. The second are acts directly perpetrated on the person of the minor and injurious to her moral or physical well-being."

supra, we find that the record is sufficient to consider the constitutional claim of the defendant on the merits. See *State* v. *Franko,* supra. The next question is whether, on the basis of the record, the defendant was, in fact, deprived of his rights guaranteed by article first, § 8 of the Connecticut constitution and the sixth amendment to the United States constitution.

" 'We have disapproved the practice of reading an entire statute to a jury where under the pleadings or the evidence only a portion of it is applicable. *State* v. *Ruiz,* [supra, 269–72]; *State* v. *Criscuolo,* 159 Conn. 175, 177, 268 A.2d 374 (1970).' *State* v. *Carter,* supra, 645. ' "While the court may instruct in the exact language of the statute, it should not do so where the exact statutory language might mislead the jury . . . . " ' *State* v. *Criscuolo,* supra." *State* v. *Belton,* 190 Conn. 496, 501–502, 461 A.2d 973 (1983). As we noted earlier, the ultimate issue in cases such as these is whether it was reasonably possible that the jury was misled by the charge into misunderstanding an issue of fundamental constitutional significance. *State* v. *Torrence,* supra; *State* v. *Grant,* supra.

The record indicates that evidence was presented at trial regarding the defendant's disruptive influence on the victim's household. The defendant occasionally slept at the victim's house. When he did, the victim, who ordinarily shared a bedroom with her mother, slept with one of her sisters. Both of the sisters testified that they disliked the defendant because he beat their mother. The elder sister testified that he stole her baby's clothes in order to sell them. The same sister also testified that when the defendant was present, the mother did not pay attention to her daughters and the eldest sister had to take the place of the mother in the family. The middle sister, who at the time of trial was fifteen years old, stated that the defendant stole numerous articles

from her. The victim testified that the defendant made promises that he never kept, stole her mother's checks and beat her mother.

The state admits in its brief that the focus of the evidence of both the state and the defendant was the act involving the sexual assault of the victim. It also states in its brief that the evidence it produced as to the stealing and beatings by the defendant, and the general unwholesome situation in which the victim was placed by him, was not sufficient to convict the defendant of the uncharged statutory alternative.

The defendant's defense as to both the sexual assault charge and the risk of injury charge was that of simple denial. The focus of his defense and the focus of the state's case was the sexual incident alleged in the substituted information. The defendant did not take the stand. All of his witnesses, except one whose testimony related to prior alleged misconduct of the victim, testified either directly or indirectly about the alleged rape, or about the date on which it was alleged to have occurred. One witness, unrelated to the defendant, a rental agent, gave alibi testimony, with reference to the date and time of the sexual act as alleged in the substituted information. His other witnesses were the doctor who had treated the victim for the assault, and relatives who testified that the victim had said another person had put his foot or finger into her vagina or that they had heard the defendant agree to buy the victim a training bra. The victim testified that the defendant promised her a training bra during the course of his sexual assault.

An examination of the defense indicates that the evidence which the defendant might have offered had he been charged with the entire statute would logically have differed from that which he did present to defend against the portion of the statute with which he was charged.

It is a fundamental tenet of due process that a defendant charged with a crime has the right to establish a defense. *State* v. *DeJesus,* 194 Conn. 376, 388, 481 A.2d 1277 (1984); *State* v. *Delgado,* supra, 282. In this case, it is highly likely that the defendant would have pursued an alternative, if not different, defense to the risk of injury count had he been charged with the entire risk of injury statute in the substituted information. For example, he might have introduced evidence to rebut the state's evidence relating to the portion of the statute with which he was not charged.

"It has been recognized that a charge of risk of injury can include a host of possibilities and a multitude of acts. See *State* v. *Eason,* 192 Conn. 37, 470 A.2d 688 (1984)." *State* v. *Apostle,* supra, 246. In order to commit an offense under the first part of the broad risk of injury statute, no touching of any part of the body is required. "[T]he creation of a prohibited situation is sufficient." *State* v. *Perruccio,* 192 Conn. 154, 160, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). In view of the evidence presented and the charge as given, several acts of the defendant, if not his very presence in the victim's household, might have lured the jury into a consideration of the uncharged portion of the risk of injury statute.

The state admits that there was not enough evidence of acts other than the sexual assault to convict the defendant of the uncharged portion of the statute. The sufficiency of the evidence to convict the defendant of the uncharged portion of the statute by use of the evidence unrelated to the sexual assault is, however, not the question here. It is, rather, whether it was reasonably possible for the jury to have been misled by the instructions of the court. The record indicates that the defendant was not unfairly surprised by the evidence relating to the uncharged portion of the statute, nor by the trial court's charge to the jury since he did not

object to its introduction, or to the charge. The record does, however, show that he was prejudiced in his defense. Unlike the situation in *State* v. *Franko,* supra, which also dealt with a statute phrased in the disjunctive and with an alleged unconstitutional enlargement of an offense, the defendant here mounted a defense which consisted of denial. In *Franko,* the defendant claimed, as to a charge of sexual assault in the first degree, that there was sexual intercourse but that it was consensual. Such a defense encompassed both a charge of threat of force, the claimed enlargement, and a charge of use of force. Since there was sufficient evidence under either alternative of the statute to allow its submission to the jury, the defendant was not prejudiced in his defense. Here, the state agrees that there was insufficient evidence on the uncharged portion of the statute for the defendant's conviction. Cf. *State* v. *Dahlgren,* 200 Conn. 586, 595, 512 A.2d 906 (1986). Therefore, an amendment to the information to charge the entire statute would have been improper, if sought. Furthermore, the uncharged portion of the risk of injury statute could relate to diverse times and places, unlike a charge of sexual assault which is anchored to a particular time and place.

From the very beginning of the trial, before any evidence was presented, the trial court invited the jury to consider both the charged and uncharged portions of the statute. At no point during the trial did the court note that the state limited its accusation to one part of the risk of injury statute. The erroneous instruction, coupled with the evidence introduced at the trial, could have led to the defendant's conviction "for a crime the elements of which were not alleged in the information. See *Fahy* v. *Connecticut,* 375 U.S. 85, 91, 84 S. Ct. 229, 11 L. Ed. 2d 171 (1963)." *State* v. *Belton,* supra, 504. We therefore hold that in this case there was at least a reasonable possibility that the jury was misled by the

trial court's instructions. Because a new trial[5] will be necessary on the risk of injury count, this conclusion is dispositive of the defendant's remaining claims of error arising out of that charge.

The defendant also claims that the trial court erred in its instruction on General Statutes § 53a-70 by instructing the jury on the "threat of use of force" portion of that statute, and by failing to define that phrase. In the substituted information, the defendant was charged with compelling the victim "to engage in sexual intercourse by the use of force against her in violation of Section 53a-70 (a) of the Connecticut General Statutes." The trial court, however, instructed the jury that "[a] person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such person *or by the threat of the use of force against such other person.*" (Emphasis added.)

The defendant contends that the charge as given was erroneous because it did not include a definition of "threat of use of force" and that it is therefore reasonably possible that the jury was misled. He does not argue, in this instance, that the trial court erred by permitting the jury to consider an uncharged alternative ground of liability. He maintains instead that the court, having charged the jury on both the use of force and the threat of use of force, erred by failing properly to guide the jury on the meaning of "threat of use of

---

[5] While it is true that the evidence presented would support a verdict based solely upon the second portion of the risk of injury statute, this is not the issue before us. "[W]hat is before us is whether it is reasonably possible that the jury were misled. See *State* v. *Rose,* 169 Conn. 683, 688–89, 363 A.2d 1077 (1975). In any event, 'appellate courts are not free to revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial.' *Dunn* v. *United States,* 442 U.S. 100, 107, 99 S. Ct. 2190, 60 L. Ed. 2d 743 (1979)." *State* v. *Belton,* 190 Conn. 496, 504, 461 A.2d 973 (1983).

force." He contends that this amounted to an omission of an essential element of the crime. The state argues that the instruction was harmless because no evidence was presented at the trial to support a charge of threat of the use of force and that the defendant's conviction rested solely on his use of superior physical force, an element upon which the jury had been properly instructed.[6]

No exception was made to the court's charge on General Statutes § 53a-70 (a). Consequently, this claim, like the defendant's claim as to the risk of injury charge, is reviewable only if it is adequately supported by the record and involves a fundamental constitutional right. *State* v. *Delgado,* supra, 276. "A claim that a jury charge omitted an essential element of the crime charged raises an issue of fundamental constitutional dimension. *State* v. *Maltese,* 189 Conn. 337, 341–42, 455 A.2d 1343 (1983); *State* v. *Hilliard,* 3 Conn. App. 339, 342, 488 A.2d 463 (1985)." *State* v. *Grant,* supra, 28. The record here is sufficient for us to review this claim.

The record discloses that the victim testified that the defendant held her arm so that she could not walk away. She also testified that she was not hurt, but that she was scared. A social worker from the department of child and youth services who met with the victim testified that the victim told her that she was very frightened at the time of the incident so that she complied with the defendant's wishes, but that he did not force her. On the basis of the victim's description of the incident, it is reasonable to infer that at some point during the incident the defendant released his hold on the

---

[6] The trial court instructed the jury that the use of force is the "use of a dangerous instrument or use of actual physical force or violence of superior physical strength against the victim." There was evidence that the defendant, an adult male, held the nine year old victim's arm in a manner that precluded her from fleeing.

victim's arm in order to accost her sexually, but that
the victim did not flee because of her fear of him.

It is fundamental that the trial court "in discharg-
ing its function of instructing the jury on the law . . .
explain those rules of law which are applicable to the
facts of the particular case. See *State* v. *Preyer,* 198
Conn. 190, 199–200, 502 A.2d 858 (1985)." *State* v.
*Grant,* supra, 31. In reviewing a claim of error involv-
ing this function of a trial court, our task is not to dis-
sect the charge microscopically, but to view it as part
of the whole trial. *State* v. *Kurvin,* 186 Conn. 555, 563,
442 A.2d 1327 (1982). In general, an omission in an
instruction is less likely to cause prejudice than a mis-
statement of the law. Id. In this case, our review leads
us to conclude that the trial court erred in omitting the
statutory definition of "threat of use of force," but that
the error was harmless, that is, that there is no rea-
sonable possibility that the jury was misled. See *State*
v. *Cobb,* 199 Conn. 322, 325, 507 A.2d 457 (1986).

We have recently had occasion to consider a similar
question in *State* v. *Grant,* supra. There, the unexpli-
cated statutory language was the word "unlawful" as
used in General Statutes § 53a-103 (a), attempted bur-
glary in the third degree. "Unlawful" in that context
is defined in General Statutes § 53a-100 (b) as an entry
or remaining upon premises "when the actor is not
otherwise licensed or privileged to do so." "Licensed
or privileged," we decided in *Grant,* was a unitary
phrase, rather than two separate concepts, which pos-
sessed legal significance bearing upon the state's bur-
den of proving whether the defendant's entry on the
premises was consensual. Id., 30–31. We thus held that
the common understanding of the term "unlawful" was
either "too general to be useful or . . . simply not
the same as [its] technical meaning . . . . " Id., 31.

In this case, "threat of use of force" as used and explicated in General Statutes § 53a-70 (a) is not so laden with technical significance. Although General Statutes § 53-21 provides a legislative definition of "threat of use of force," that definition does not differ substantially, as the defendant argues, from what might be deemed to be the common understanding of the phrase. The statute provides that "the threat of use of force against such other person or a third person" is that which "reasonably causes such person to fear physical injury to such person or third person." General Statutes § 53a-70 (a). According to Webster, Third New International Dictionary, "threat" means: "1: an indication of something impending and [usually] undesirable or unpleasant . . . a: an expression of an intention to inflict evil, injury, or damage on another [usually] as retribution or punishment for something done or left undone . . . b: expression of an intention to inflict loss or harm on another by illegal means and [especially] by means involving coercion or duress of the person threatened . . . ."

In construing statutes, the commonly approved usage of the language should control. General Statutes § 1-1 (a); *State* v. *Roque,* 190 Conn. 143, 151, 460 A.2d 26 (1983). The defendant has in no way shown that "threat of use of force" was used in the statute in anything other than its ordinary meaning. See *State* v. *Maresca,* 173 Conn. 450, 460–61, 377 A.2d 1330 (1977). We therefore cannot conclude that it is reasonably possible that the jury was misled by the failure of the trial court to instruct on the statutory meaning of "threat of use of force."[7]

---

[7] This conclusion should not be construed as approval of the charge as given. *State* v. *Smith,* 194 Conn. 213, 220, 479 A.2d 814 (1984). The better practice would have been for the trial court to have instructed the jury on the statutory definition of "threat of use of force."

There is error as to the risk of injury count only, the judgment finding the defendant guilty of risk of injury to a minor is set aside and the case remanded for a new trial on that count.

In this opinion the other judges concurred.