## STATE OF CONNECTICUT *v.* WILLIAM VELEZ
## (6667)

BORDEN, DALY and O'CONNELL, Js.

Argued October 13—decision released December 13, 1988

*John R. Williams*, for the appellant (defendant).

*Susan C. Marks*, deputy assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant appeals from the judgment of conviction, after a jury trial, of two counts of risk of injury to a minor in violation of General Statutes § 53-21,[1] and one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1).[2] He claims that the judgment of conviction must be reversed on the following grounds: (1) the trial court erred in admitting certain constancy of accusation testimony; (2) the trial court erred by prohibiting the defendant from presenting certain evidence to impeach the credibility of the witnesses against him; (3) certain comments made by the assistant state's attorney during final argument undermined the requirement of proof beyond a reasonable doubt; and (4) the court's jury instructions permitted a verdict that was not unanimous. We find no error.

The jury could reasonably have found the following facts. The two female victims were E, age nine, and her sister, A, age seven. In the summer of 1986, their

---

[1] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

[2] General Statutes § 53a-71 (a) (1) provides: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under sixteen years of age . . . ."

mother occasionally left them with the defendant while she went shopping with the defendant's wife. On one occasion, E was watching a movie entitled "Mother's Day" on a video cassette recorder in the defendant's bedroom, while A was playing in the living room. The defendant was wearing shorts but no shirt. E got under the bed covers with the defendant. The defendant unzipped E's pants, put his hand inside her pants and touched her genital area. He did not remove his shorts but he did expose his penis. On another occasion, the defendant took A into his bedroom, where he pulled down her pants and put his penis into her vagina.

I

The defendant first claims that the trial erred by admitting certain constancy of accusation testimony (1) because the testimony was not consistent with that of the victim, and (2) because the court did not make an "express finding" that the statements made by the victims to the witnesses were made at times when it was natural for the victims to make them. We disagree.

The facts relevant to this claim are as follows. E told her younger sister, A, about the incident involving the defendant when it happened, but she did not tell anyone else until near Christmastime, when she told her babysitter, Brunilda Mercado. Both E and A testified that they had told their mother, a doctor, a police officer and a counselor about what the defendant had done to them. Over the defendant's objection and exception, these witnesses testified as constancy of accusation witnesses. Mercado testified that on December 29, 1986, E and A described to her what the defendant had done to them. Evelyn Vega, the mother of the victims, testified that near Christmastime, 1986, and later, when the victims were in counseling, they had told her what the defendant had done to them. Rosemary Klenk, a pediatrician, testified that she had examined the vic-

tims on January 5, 1987. Sergeant Robert S. Braccia of the Stamford police department testified that he had interviewed the victims on December 30, 1986. Similarly, Anna Badini, a psychologist, testified that between February and June, 1987, when she was treating the victims, they had described to her what the defendant had done to them. Each of these witnesses related the victims' descriptions of the defendant's conduct.

We first consider the defendant's argument that the testimony of the witnesses should have been excluded because in certain particulars it was inconsistent with the testimony of the victims. Although our Supreme Court has analyzed constancy of accusation testimony as "a subcategory of prior consistent statement evidence"; *State* v. *Ouellette,* 190 Conn. 84, 98, 459 A.2d 1005 (1983); neither the Supreme Court nor this court has required as a condition of its admissibility that there be no inconsistencies between the victim's testimony and that of the constancy of accusation witness. The witness may recount the details of the statement made to him by the victim, provided that the victim first testifies "concerning the offense" and "identifies the persons to whom she made the statement." Id., 97. Any inconsistencies between the victim's testimony and the testimony of the witness are left to the jury for a determination of whether the victim was constant and consistent in relating what had happened to her. *State* v. *Brigandi,* 186 Conn. 521, 531, 442 A.2d 927 (1982).

The defendant also argues that the evidence was inadmissible because the court did not make an "express finding" that the statements by the victims to the witnesses were made at a time when it was natural for the victims to make them. The defendant does not argue that there was no evidence from which the court could make such an express finding. Rather, he contends that *State* v. *Ouellette,* supra, 99–100, requires

such an express finding as a precondition to admissibility. This contention is based on language in *State* v. *Ouellette,* supra, 99, that before constancy of accusation testimony can be admitted, "the trial court must find, under the circumstances in each case . . . that the statement was made at a time when it was natural to make it . . . . " See also id., 100; *Bodak* v. *Masotti,* 14 Conn. App. 347, 354, 540 A.2d 719 (1988) (finding of impeachment by recent fabrication must be made before prior consistent statement can be admitted). The state argues that such an express finding is not a precondition of admissibility, and that any delay between the time of the offense and when the victim told the witness is a matter of the weight of the testimony rather than its admissibility. *State* v. *Brigandi,* supra, 529. We need not resolve this dispute, however, because in this case the trial court did find, in effect, that the statements were made at the requisite time.

Mercado was the first constancy of accusation witness. In the trial court, the defendant, citing *State* v. *Ouellette,* supra, objected on the ground that the statements to Mercado were not made when it was natural for the victims to make them. The court overruled the objection noting the date of the victims' conversation with Mercado, and noting also that it must "[t]ake into consideration . . . that these are children under the age of sixteen who are making the complaint." It also noted that "our statutes . . . recognize that there may be a delay between the alleged act performed upon a child and the initial complaint."[3] We read this as the functional equivalent of a finding by the court that the statements were made to Mercado when it was natu-

---

[3] The court was referring to General Statutes § 53a-69, which provides, inter alia, that where the victim of a sex-related offense is less than sixteen years of age, the time limitation for a complaint is extended to "within one year after a parent, guardian, or other competent person specially interested in the alleged victim learns of the offense."

ral for the victims to make them. Even if *State* v. *Ouellette,* supra, requires an appropriate finding by the court as a precondition to the admissibility of constancy of accusation testimony, we do not read it as requiring the talismanic use of the word "find" in its ruling. Whatever the contours of *Ouellette,* they are satisfied where, as here, it is clear that the court considered the issue of the timing of the victim's statement and articulated on the record its determination that the timing of the statement was natural.

As to the testimony of the other constancy of accusation witnesses, there was no comparable colloquy between the court and counsel, because in each instance the defendant's objection consisted of a shorthand reference to his earlier objection, and the court's ruling, in similar fashion, referred to its earlier ruling.[4] Under these circumstances, we regard the court's rulings as having incorporated the finding it made earlier in overruling the defendant's objection to Mercado's testimony. This is particularly true because the evidence indicated that the victims told their mother immediately after telling Mercado, that they told Braccia the next day when their mother brought them to the police department, that their statements to Klenk were made only five days later, when she examined the victims, and that their statements to Badini were made over the next five months while she was treating them.

## II

The defendant next claims that the court erred in two evidentiary rulings that he claims impaired his right of cross-examination and his right to present a defense. These claims are without merit.

---

[4] For example, the following colloquy took place when Braccia testified:
"Mr. Feinstein [counsel for the defendant]: Well, I will make the same objection that I made to the previous witnesses, please, Your Honor.
"The Court: All right. Same ruling.
"Mr. Feinstein: Thank you. Exception."

The first claim concerns the defendant's cross-examination of Vega, the mother of the victims. She had testified that she and the defendant's wife, Nilda Velez, had had an argument two months before she found out about the defendant's conduct with her daughters, and that thereafter she did not bring her daughters to the defendant's house. The defendant asked what the fight was about. The court sustained the state's objection on the ground that the question concerned an issue that was "too peripheral" and irrelevant to the case.

The defendant claims that the court's ruling curtailed his right to cross-examine Vega for bias. He argues that his offer of proof at trial was that he would show that Nilda Velez had accused Vega of corrupting the victims by her own behavior, and that Vega fabricated her accusations against the defendant and influenced her daughters to do the same in retaliation against Nilda Velez. The defendant's argument, however, misdescribes the offer of proof at trial. The defendant's offer of proof was that the argument concerned the way that Vega was raising the children, and that "there is influence a child feels towards its parents when they see that the parent is being attacked by an outside party—that they will retaliate." Thus, the claim at trial was not that Vega had retaliated or influenced the victims to do so, but that the victims did so on their own in order to avenge the false accusation against their mother.

Thus, the defendant presents on appeal a theory of admissibility that was not presented to or ruled upon by the trial court. He is not entitled to review of such a claim, and we decline to do so. *DiSorbo* v. *Grand Associates One Limited Partnership,* 8 Conn. App. 203, 208–209, 512 A.2d 940 (1986). The defendant does not challenge the propriety of the ruling made in response to the actual offer of proof. Furthermore, Vega testi-

fied that the argument did not take place in front of the victims, and neither the testimony of Nilda Velez nor that of the defendant supported the defendant's theory of admissibility as stated in the trial court. Thus, there is simply no basis on which to find error in the court's ruling.

The defendant's second evidentiary claim is that the court erred by excluding from evidence a certain video cassette recorder film entitled "Mother's Day," and the defendant's testimony regarding it. He argues (1) that the film would have impeached the credibility of E by contradicting her testimony regarding the film,[5] and (2) that the film and his testimony would have supported his defense, namely, that the victims had fabricated their stories, by establishing an independent source from which they could have imagined the activities they described in their testimony. We disagree.

E testified that she had watched the film at the defendant's house both on the day of the incident and on other occasions. She also testified that there was nothing in the film like what had happened to her. The defendant testified on direct examination that both victims had watched the film at his house. He then sought to introduce the film and to testify that the film portrayed a sexual assault on a woman dressed as a young girl. The court, after viewing the relevant portion of the film, found that it contained scenes of women bound and gagged, and of a woman, dressed in children's clothes, who was grabbed in a park, beaten, and had her blouse removed. The court found that it did not show a vaginal area, a penis, or a man on a bed with a young child. It also found that there was nothing in the film that was similar to what E had described in

---

[5] Although the defendant in his brief refers to impeachment of both victims by contradiction of their testimony, he points only to the testimony of E regarding the film. We therefore consider the claim as limited to her credibility.

her testimony, and nothing that an eight or ten year old child would view as similar to the defendant's conduct with the victims as described by them. The court thus concluded that the film provided no foundation for the defendant's claim of contradiction and fabrication, and sustained the state's objection. The court's factual findings are fatal to both the defendant's arguments.

Whether extrinsic evidence contradicts testimony of a witness so as to require its introduction into evidence for impeachment purposes is within the trial court's discretion, subject to review only for abuse of that discretion. See, e.g., *L. F. Pace & Sons, Inc.* v. *Travelers Indemnity Co.,* 9 Conn. App. 30, 50–51, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 886 (1986). The trial court did not abuse its discretion in finding that the film and the defendant's description of it would not contradict E's testimony. Similarly, although a defendant has a due process right to present a defense; *State* v. *Bryant,* 202 Conn. 676, 704, 523 A.2d 451 (1987); that does not permit him to present evidence that is irrelevant or otherwise inadmissible. *State* v. *Rogers,* 9 Conn. App. 208, 214, 518 A.2d 399 (1986), cert. denied, 202 Conn. 806, 520 A.2d 1288 (1987). The trial court acted well within its discretion when it found, after viewing the film, that there was no similarity between the film and the victims' testimony. This finding is amply supported by the court's factual description of the film. Thus, the court was justified in rejecting the offer of the film and of the defendant's testimony as a basis for the defendant's claim of fabrication by the victims.

### III

The defendant next claims that the assistant state's attorney undermined the requirement of proof beyond a reasonable doubt by arguing to the jury that the issue before it was whether to believe the defendant or the

victims. The defendant seeks review of this claim under *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973), because he did not object to the argument at the trial. Under our formulation for *Evans* review, we decline to review the claim fully because, although the defendant places a constitutional label on the claim, a limited review of the record clearly discloses that the claim is not truly of constitutional proportions and "is simply characterized as such by the defendant." *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

We first note that the defendant does not claim that the assistant state's attorney's argument constituted prosecutorial misconduct. Compare, e.g., *State* v. *Williams,* 204 Conn. 523, 535–36, 529 A.2d 653 (1987). His brief does not mention, and he specifically disavowed at oral argument in this court, any such claim. Nor does he claim that the court gave a "comparative credibility" charge. Compare, e.g., *State* v. *Orsini,* 187 Conn. 264, 276, 445 A.2d 887, cert. denied, 459 U.S. 861, 103 S. Ct. 136, 74 L. Ed. 2d 116 (1982). His claim is that the assistant state's attorney's remarks during final argument[6] should be viewed like jury instructions

---

[6] The specific remarks in question are as follows: "This case boils down basically to credibility. [E] said that in the summer of 1986, William Velez touched her private parts with his hand in a certain way in a certain location in a certain manner under certain circumstances and she said he did. He says he didn't.

"[A] says that William Velez put his thing in her thing. She said on many occasions what she meant by that—she said it hurt. Mr. Feinstein asked if it hurt on the inside or the outside. She said that it hurt both on the inside and on the outside. William Velez says it never happened. The rest is very— you have to try and decide taking the other evidence into consideration, applying your common sense in your judgment about people, your judgment about character who to believe. You don't have to be an expert to do that.

\* \* \*

"And then consider some of the things that I've said and decide today or whenever whether or not you can choose to believe Willie Velez and disbelieve [E] and [A]. I don't think that's a choice you have. But it's for you to decide, not me. Thank you."

delivered by the court, and that the remarks so viewed undermined the state's burden of proof.

The functions of final argument by the attorneys and jury instructions by the court are obviously quite different. We know of no authority, reason or policy to equate the two in the context of this case. Even comparative credibility instructions by the court must be viewed in the context of the entire charge. Id., 277. Moreover, the jury was instructed that it was the court's duty to state the law, and that the arguments of counsel were not evidence and could be accepted or rejected by the jury. Furthermore, in this case the defendant testified that he never babysat for the victims and did not engage in the conduct that the victims described, and there was no circumstantial evidence, so that the remarks in question did not misstate the jury's ultimate task. In fact, the defendant's counsel argued essentially the same way to the jury. This record simply does not support the defendant's claim.

IV

The defendant's final claim is that the court's instructions permitted a verdict on the two risk of injury counts that was not unanimous. Although the defendant did not properly preserve this claim at trial, it is reviewable under *State* v. *Evans,* supra. *State* v. *Mancinone,* 15 Conn. App. 251, 273, 545 A.2d 1131 (1988). We reject the defendant's claim.

With respect to each victim, the information charged the defendant with violating General Statutes § 53-21 under both statutory theories, namely, placing a victim in such a situation that her morals were likely to be impaired, and doing an act likely to impair her health and morals. The court instructed the jury that proof beyond a reasonable doubt that the defendant violated either or both parts of the statute would suffice for a

guilty verdict on that count. The court did not give a specific unanimity instruction focused on each part of the statute.

With respect to E, the court charged that the state's evidence supporting the harmful situation theory was that the defendant partially undressed himself while alone with the victim in his bedroom, displayed his penis to her, pulled her pants down and had contact with her vagina. The court charged that the evidence supporting the harmful act theory was that the defendant touched the victim's vagina.

With respect to A, the court charged that the evidence supporting the harmful situation theory was that the defendant partially undressed himself while alone with the victim in his bedroom, displayed his penis to her and pulled her pants down so as to reveal her vagina. The court charged that the evidence to support the harmful act theory was that the defendant engaged in sexual intercourse with the victim, and had contact with the victim's vagina with his penis or hands.

The defendant argues that under the principles stated in *State* v. *Benite,* 6 Conn. App. 667, 507 A.2d 478 (1986), and its progeny; see, e.g., *State* v. *Jackson,* 13 Conn. App. 288, 535 A.2d 1327 (1988); the court was required to instruct the jury that its verdict must be unanimous with respect to each of the statutory theories, because the theories are conceptually distinct from each other. We conclude, however, that no such specific unanimity instruction was required in this case.

The specific unanimity instruction that the defendant seeks here "is required only where a trial court charges a jury that the commission of any one of several alternative actions would subject a defendant to criminal liability, and those actions are conceptually distinct from each other, and the state has presented some evidence supporting each alternative." *State* v. *Benite,*

supra, 674–75. The *Benite* rule "does not apply . . . where the multiple factual allegations do not amount to multiple statutory subsections or to multiple statutory elements of the offense." *State* v. *Mancinone,* supra, 274. "Where, however, the jury is presented with alternative, conceptually distinct statutory subsections, or with alternative, conceptually distinct elements of the same statute, as possible bases for guilt, the principles of *Benite* come into play, because it is in those situations that 'the possibility that the jurors may actually disagree on which alternative, if either, the defendant violated is the highest.' " Id., 276, quoting *State* v. *Benite,* supra, 674. Application of these principles to General Statutes § 53-21, the risk of injury statute, as it was presented to the jury under the facts of this case, leads us to conclude that no such specific unanimity instruction was required.

It is true that "General Statutes § 53-21 proscribes 'two general types of behavior likely to injure physically or to impair the morals of a minor under sixteen years of age: (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare; see *State* v. *Smith,* 149 Conn. 487, 181 A.2d 446 [1962]; and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being. See *State* v. *Coulombe,* 143 Conn. 604, 124 A.2d 518 [1956]; *State* v. *Silver,* 139 Conn. 234, 93 A.2d 154 [1952].' " *State* v. *Newton,* 8 Conn. App. 528, 532, 513 A.2d 1261 (1986), quoting *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). It is also true that these two general types of behavior have been viewed for purposes other than the unanimity requirement as separate and distinct. See, e.g., *State* v. *Dennis,* supra (specific intent not required for second part of the statute); *State* v. *Newton,* supra (impermissible enlargement of crime charged to instruct jury on both parts of statute when only one charged in infor-

mation). We do not doubt that in an appropriate case the facts alleged by the state under one part of the statute could be conceptually distinct from the facts alleged under the other part.

Whether a specific unanimity instruction is required in any case turns, not only on the language of the two statutory subsections or elements, but also on the evidence in the case and how the case is presented to the jury in the court's instructions. See *State* v. *Jackson,* 13 Conn. App. 288, 294, 297, 535 A.2d 1327 (1988). Where the evidence indicates that varying actions of the defendant are not conceptually distinct from each other; see *State* v. *Mancinone,* supra, 277; or where the court's instructions eliminate any conceptual distinction; see *State* v. *Jackson,* supra, 296; a specific unanimity instruction is not required.

In this case, the two categories of the defendant's conduct, although stated by the court to fall within the two different statutory theories, were not conceptually distinct from each other. With respect to E, the defendant's conduct as presented to the jury under the first part of the statute was undressing both himself and the victim so as to reveal their genitals, and having contact with her vagina; under the second part, it was touching her vagina. With respect to A, the defendant's conduct under the first part of the statute was undressing both himself and the victim so as to reveal their genitals; under the second part, it was engaging in sexual intercourse and having contact with her vagina by use of his penis or hands. These are not conceptually distinct actions. They both involve sexual activity by the adult defendant with the very young female victims, likely to be harmful to their physical, emotional and moral well-being. Cf. *State* v. *Mancinone,* supra (giving teenage girls liquor and marihuana not conceptually distinct activities).

Thus, this is not a case in which the jury, in order to determine whether the defendant was guilty under either or both of the two separate statutory subsections, was required to determine whether he engaged in two separate sets of conduct that were conceptually distinct. This is a case in which the jury was required to determine only whether the defendant engaged in one course of conduct, namely, sexual activity with each victim, which could then, under the instructions of the court, be allocated by the jury to either or both statutory subsections. Under these circumstances, the unanimity principles articulated in *Benite* do not apply.

There is no error.

In this opinion the other judges concurred.